**A.B.M., Natural Mother, Appellant,**

v.

**M.H. & A.H., Prospective Adoptive Parents, Appellees.**

**No. 6200.**

Supreme Court of Alaska.

Sept. 24, 1982.

Suzanne Weller and Jim Kentch, Alaska Legal Services Corp., Anchorage, for appellant.

Thomas E. Fenton, Fairbanks, for appellees.

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11 of the Constitution of Alaska, and Alaska R.Admin.P. 23(a).

1. AS 20.15.100(a) provides in pertinent part:

Niesje J. Steinkruger and D. Rebecca Snow, Asst. Attys. Gen., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for amicus curiae State of Alaska.

Terry L. Pechota, Boulder, Colo., for amicus curiae Native American Rights Fund.

## OPINION

Before RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

DIMOND, Senior Justice.

## I

On February 16, 1980, A.B.M. gave birth to a baby girl, R.H. A.B.M. was not married and had made arrangements prior to birth to give her child up for adoption to her sister and brother-in-law, M.H. and A.H. On April 9, 1980, a hearing was held before a master during which A.B.M. executed a Consent to Adoption and a Relinquishment of Parental Rights. Because an adoption questionnaire completed by the H.'s indicated that R.H. was an Indian child, the hearing was conducted pursuant to the Indian Child Welfare Act (Act), 25 U.S.C. §§ 1901–63 (Supp.1981). A.B.M. was advised that under the terms of the Act she could revoke her consent to the adoption at any time before the final adoption decree was entered. A hearing on the H.'s petition for adoption took place in August 1980 and a final decree of adoption was entered by the superior court on September 5, 1980.

In November 1980 the State Department of Health and Social Services, Division of Family and Youth Services (Department) became aware of R.H.'s adoption while conducting a children's proceeding involving one of M.H.'s biological sons. The Department discovered that it had not been notified of R.H.'s adoption proceedings as required by AS 20.15.100(a)[1] and had thus

After the filing of a petition to adopt a minor, the court shall fix a time and place for hearing the petition. At least 20 days before the date of hearing, notice of the filing of the petition and of the time and place of hearing shall be given by the petitioner to (1) the

been deprived of an opportunity to investigate the suitability of R.H.'s prospective home.

As a result of the deficiency in the adoption proceedings the trial court, on motion of the State, vacated the adoption decree and ordered the Department to conduct home studies on the prospective adoptive parents and the natural mother. At the time the decree was vacated, however, the mother, A.B.M., had changed her mind about consenting to the adoption. Following entry of the court's order, A.B.M. formally petitioned for return of custody of her daughter pursuant to section 1916 of the Indian Child Welfare Act.

In June 1981, hearings were conducted to determine the future custody of R.H. At the outset of these hearings, A.B.M. filed a motion for summary judgment to establish that the standards of the Indian Child Welfare Act controlled the outcome of the custody issue. The court denied the motion, and proceeded to determine whether the adoption should be granted under state law. The court concluded that it was in the best interests of R.H. to grant the adoption by the H.'s, and refused to allow A.B.M. to withdraw her consent.

The principal issue on appeal is whether the superior court erred in not applying the provisions of the Indian Child Welfare Act to the custody proceedings. A.B.M., and the Native American Rights Fund as amicus curiae, contend that because R.H. is an Indian child she is entitled to the procedural safeguards accorded Indian children by federal law. In response, the prospective adoptive parents, the H.'s, and the State of Alaska as amicus curiae, argue that the protections of the Act have no application to the instant case. They claim that Congress intended that the Act apply only to custody proceedings involving the removal of Indian children from their homes by nonfamily public and private agencies, not to disputes within the extended family. In addition, the H.'s now assert that R.H. is not an Indian child as defined by the Act and should therefore be excluded from its coverage.

We reject both of these contentions for the reasons stated below, and find that the superior court was mistaken in not applying the provisions of the Indian Child Welfare Act to R.H.'s custody proceedings.

## II

▬ The legislative history of the Indian Child Welfare Act, 25 U.S.C. §§ 1901–63 (Supp.1981) reveals that Congress was concerned with two major social goals: protecting the best interests of Indian children and promoting the stability and security of Indian tribes and families.[2] In order to achieve these objectives the Act was created to provide "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . ."[3]

The protections of the Act apply to child custody proceedings involving Indian children.[4] It is clear from the Congressional

---

department, unless the adoption is by a step-parent of the child; . . . . The notice to the department shall be accompanied by a copy of the petition.

**2.** *See* H.R.Rep.No.1386, 95th Cong., 2d Sess. 25–26 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 7530.

**3.** 25 U.S.C. § 1902 (Supp.1981).

**4.** 25 U.S.C. § 1903 provides in pertinent part:
(1) "child custody proceeding" shall mean and include—
(i) "foster care placement" which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;
(ii) "termination of parental rights" which shall mean any action resulting in the termination of the parent-child relationship;
(iii) "preadoptive placement" which shall mean the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; and
(iv) "adoptive placement" which shall mean the permanent placement of an Indian

findings included in the Act that Congress was concerned with the alarming number of Indian families which had been broken up by the unwarranted removal of their children by nontribal public and private agencies, thereby depriving the children of exposure to cultural and social standards prevailing in Indian communities and families.[5] The prospective adoptive parents argue that because the Act was intended to remedy the agency bias that has resulted in the removal of Indian children from their cultural settings, its application is not required in the instant case. They contend that R.H.'s adoption by members of her "extended family" (M.H. and A.H.) will not deprive her of the exposure to Indian cultural or social values the Act is designed to safeguard.

■ We agree that the H.'s have correctly identified one of the primary purposes of the Act, and that application in the instant case is not required to preserve R.H.'s ties to Indian cultural or social values. Nevertheless, we cannot justify creating a judicial exception to the Act's coverage on this basis alone.[6]

The language of the Act makes no reference to exceptions for custody disputes within the extended family. Nor does the Act draw a distinction based upon who the adoptive or foster parents of the Indian child will be. In contrast, Congress explicitly excluded certain proceedings from the

protections of the Act. In section 1903(1) the definition of "child custody proceeding" specifically excludes custody disputes resulting from divorce proceedings between parents of an Indian child and placements of Indian children resulting from juvenile delinquency actions.[7] It is clear, then, that there were certain internal family disputes which Congress intended to except from the provisions of the Act. These exceptions were clearly expressed and we find no compelling basis for implying any others.[8]

In support of their position the H.'s argue that the Act seeks to regulate the "removal of Indian children from their families."[9] They submit that the Act does not apply to the instant case as it instead concerns a voluntary placement within the family. This reasoning is faulty, however, since it improperly assumes that the terms "family" and "extended family" are congruent. We find no language in the Act or its legislative history to indicate that Congress accorded the word "family" anything more than its most common meaning. We are hesitant to conclude that Congress intended that the Act only apply when a child was being removed from his or her extended family in the absence of explicit language to that effect. That Congress did indeed make a distinction between family members and extended family members is borne out by section 1903(2), which defines "extended family member" for purposes of the Act.[10]

child for adoption, including any action resulting in a final decree of adoption.
Such term or terms shall not include a placement based upon an act which, if committed by an adult, would be deemed a crime or upon an award, in a divorce proceeding, of custody to one of the parents.

5. *See* 25 U.S.C. § 1901(4), (5) (Supp.1981).

6. We decline to follow *In re Bertelson,* 617 P.2d 121 (Mont.1980), which concerned a custody dispute between the natural mother and grandparents of an Indian child. The *Bertelson* court categorized the conflict as "an internal family dispute" and held that the Indian Child Welfare Act was not intended to cover such proceedings. We find such interpretation contrary to express provisions of the Act.

7. *See* n.4 *supra.*

8. Our position is consistent with our holding in *E. A. v. State,* 623 P.2d 1210 (Alaska 1981), in which we considered the status of grandparents of Indian children who attempted to assert their right to preferential adoptive placement under 25 U.S.C. § 1915(a). Although we held that the Act did not apply because the state had started the adoptive placement before its effective date, we recognized that the Act *would be* applicable to any future proceedings in that case. *Id.* at 1215.

9. 25 U.S.C. § 1902 (Supp.1981).

10. 25 U.S.C. § 1903(2) (Supp.1981) provides:
"[E]xtended family member" shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or

██ The State, as amicus curiae, argues that an absurd result will be reached if the Act is applied to A.B.M.'s case, because the H.'s qualify as "Indian custodians" within the meaning of the Act and thus would be entitled to the same procedural protections accorded to the natural parents.[11] The intent of the Act was to provide procedural safeguards for the parent or person standing in the parental role and is evidenced by the fact that the language of the Act consistently refers to its provisions as being applicable to the "Indian parent or custodian" in the disjunctive.[12]

██ However, under the facts of this case, we conclude that the H.'s do not fall within the intended meaning of "Indian custodian". The pertinent provision of the Act, 25 U.S.C. § 1916(a), mandates that "whenever a final decree of adoption of an Indian child has been vacated or set aside ... a biological parent or prior Indian custodian may petition for return of custody ...."[13] By its terms, this provision makes it clear that the protections of the Act were not intended to apply to prospective adoptive parents against whom an adoption decree was vacated when the natural parent is seeking custody. The H.'s do not meet the requirement of being "prior Indian custodians" regardless of the manner in which the term "Indian custodian" is interpreted.

### III

██ The H.'s final contention is that the Indian Child Welfare Act does not apply to R.H. because she is not an "Indian child"

within the meaning of the term as used in the Act. The Act defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."[14] The H.'s argue that there is nothing in the record to indicate that R.H. is a member of or eligible for membership in an Indian tribe. Similarly, although it is conceded that R.H. is the biological child of A.B.M., there has been no showing that her mother is a member of an Indian tribe.

We note, however, that in an adoption questionnaire signed by the H.'s and their attorney, the Act's definition of an Indian child was set out in full. Both adoptive parents and their attorney clearly indicated in the questionnaire that R.H. is an Indian child, that her tribal affiliation is Bethel, and that she is subject to the provisions of the Indian Child Welfare Act. Once the H.'s admitted that R.H. was an Indian child subject to the provisions of the Act, they became bound by their judicial admissions in the superior court.[15]

### IV

We conclude that the superior court erred in not applying the provisions of the Indian Child Welfare Act to R.H.'s custody proceedings. We must still determine, however, what effect the proper application of the federal guidelines will have on R.H.'s status.

sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent. .

11. 25 U.S.C. § 1903(6) provides:

"Indian custodian" means any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such child.
The state argues that there is no evidence that the H.'s do not have legal custody by tribal custom, by state law, or by the intent of the natural mother and thus they should be regarded as the Indian custodians of R.H.

12. For example, 25 U.S.C. § 1912(a) provides that in any involuntary proceeding in a state court the moving party "shall notify the parent *or* Indian custodian and the Indian child's tribe" and § 1912(b) provides the parent *or* Indian custodian with court appointed counsel if indigent. (Emphasis added.)

13. See section IV of this opinion for a full discussion of 25 U.S.C. § 1916(a).

14. 25 U.S.C. § 1903(4) (Supp.1981).

15. *See* IX J. Wigmore, Evidence § 2588, at 586 (1940); C. McCormick, Law of Evidence § 262, at 630 (1972).

Section 1916(a) of the Act clearly applies to cases such as R.H.'s, in which a decree of adoption of an Indian child has been vacated. Section 1916(a) provides:

(a) Notwithstanding State law to the contrary, whenever a final decree of adoption of an Indian child has been vacated or set aside or the adoptive parents voluntarily consent to the termination of their parental rights to the child, a biological parent or prior Indian custodian may petition for return of custody and the court shall grant such petition unless there is a showing, in a proceeding subject to the provisions of section 1912 of this title, that such return of custody is not in the best interests of the child.

If a biological parent petitions for return of custody—as did A.B.M. on February 2, 1981 —section 1916(a) mandates that the court grant the petition unless someone challenges it and shows that the return of custody is not in the child's best interests. When there is such a challenge, the hearing to determine whether the petitioner regains custody must meet the requirements of section 1912.

Section 1912 states in pertinent part:

(d) Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

. . . .

(f) No termination of parental rights may be ordered in such a proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

The determination of a child's best interests under the Act clearly differs from the analysis required by state law when a parent who has consented to an adoption seeks to regain custody of his or her child upon termination of the adoptive relationship. The Act provides that if a party wishes to defeat a biological parent's petition for return of custody, he or she must prove that such return is not in the child's best interests by showing (1) that remedial and rehabilitative programs designed to prevent the breakup of the Indian family have been implemented without success and (2) that such return of custody is likely to result in serious harm to the child. 25 U.S.C. §§ 1912, 1916 (Supp.1981). This final element must be shown beyond a reasonable doubt and must be established by the testimony of qualified expert witnesses.

█ In contrast, the determination of whether A.B.M. would be entitled to regain custody of R.H. under state law is governed by the standards set forth in AS 20.15.070.[16] This statute provides natural parents with an absolute right to withdraw their consent within ten days of giving consent to adoption. AS 20.15.070(b). However, if a parent attempts to withdraw his or her consent after the ten day period has elapsed (as did A.B.M.), the court must hold a hearing to determine whether it is in the best interests of the child to allow the natural parent to withdraw consent.[17]

A.B.M. was not accorded a hearing meeting the requirements of the Indian Child Welfare Act. A hearing was held consider-

**16.** AS 20.15.070 provides in relevant part:

(b) A consent to adoption may be withdrawn before the entry of a decree of adoption, within 10 days, by delivering written notice to the person obtaining the consent, or after the 10-day period, if the court finds, after notice and opportunity to be heard is afforded to petitioner, the person seeking the withdrawal, and the agency placing a child for adoption, that the withdrawal is in the best interests of the person to be adopted and the court orders the withdrawal.

**17.** *Cf. S.O. v. W.S.*, 643 P.2d 997 (Alaska 1982). When a natural parent consents to his or her child's adoption and seeks to withdraw such consent before a final decree of adoption has been entered no parental preference is to be applied in determining whether withdrawal of the consent is in the child's best interest. *Id.* at 1005.

ing R.H.'s best interests under the test set forth by state law rather than the test of serious emotional or physical harm to the child required by section 1912(f). The superior court did not set "beyond a reasonable doubt" as the standard of proof, and did not require testimony of qualified expert witnesses. In short, the court ignored the protections afforded to both R.H. and A.B.M. by the Indian Child Welfare Act.

We conclude that because A.B.M. petitioned for return of her child when the H.'s adoption decree was vacated, her child must be returned to her unless such an arrangement is proved to be contrary to R.H.'s best interests under the standards established by the Indian Child Welfare Act. The holding by the superior court granting the adoption of R.H. by M.H. and A.H. is therefore REVERSED. This case is REMANDED to the superior court for a hearing to determine the custody of R.H. in accordance with the Indian Child Welfare Act.

BURKE, C. J., not participating.