In re the CUSTODY OF A.K.H.

No. C4-93-34.

Court of Appeals of Minnesota.

June 29, 1993.

Review Denied Aug. 24, 1993.

Anita P. Fineday, Cass Lake, for appellant intervenor.

Elizabeth E. Dunn, Legal Aid Service of Northeastern Minnesota, Brainerd, for respondent Grandmother.

Victor H. Smith, Smith Law Office, Walker, for respondent Mother.

Respondent Father, pro se.

Considered and decided by SHORT, P.J., and KALITOWSKI and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

The district court denied the child's Indian tribe the right to intervene in this intrafamily custody proceeding. We reverse and remand.

## FACTS

This action arose out of a custody proceeding involving an Indian child, A.K.H., born April 14, 1989. A.K.H. is an enrolled member of the Leech Lake Band of Chippewa Indians. A.K.H. has resided with re-

spondent maternal grandmother for most of her life. The grandmother is also an enrolled member of the Leech Lake Band of Chippewa Indians, as are respondents mother and father.

The grandmother filed a summons and petition for the custody of A.K.H. on May 27, 1992. She sought "sole physical and legal custody" of A.K.H. with visitation rights to the parents, but did not seek to terminate parental rights.

On July 9, 1992, the Leech Lake Band of Chippewa Indians moved to intervene in the custody proceedings pursuant to the Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901–1963 (1988) (the "Act"). The district court denied the motion on December 3, 1992 without explanation. The Leech Lake Band of Chippewa Indians appeals from this order, arguing it has a statutory right to intervene under the Act.

## ISSUE

Did the district court err in determining that under the Indian Child Welfare Act, an Indian tribe does not have a statutory right to intervene in a custody dispute between the parents and grandmother of a child where all the parties are enrolled members of an Indian tribe?

## ANALYSIS

■ The facts of this case are undisputed. The issue is whether the Leech Lake Band of Chippewa Indians has a statutory right to intervene in this custody proceeding under the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963 (1988). Intervention is governed by 25 U.S.C. § 1911(c) which provides:

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.

■ Where the district court applies the language of a statute to a set of undisputed facts, the district court's conclusion is one of law and does not bind this court. *A.J. Chromy Constr. Co. v. Commercial*

*Mechanical Servs., Inc.*, 260 N.W.2d 579, 582 (Minn.1977). The construction of a statute is a question of law and is subject to de novo review on appeal. *Doe v. Minnesota State Bd. of Medical Examiners*, 435 N.W.2d 45, 48 (Minn.1989). Therefore, we review the district court's construction of the applicable statute de novo. *See id.*

### *Foster Care Placement*

■ All parties concede this case does not involve the termination of parental rights. Thus, the Leech Lake Band of Chippewa Indians may intervene only if this case involves "foster care placement." *See* 25 U.S.C. § 1911(c). The Indian Child Welfare Act defines "foster care placement" as

any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated.

25 U.S.C. § 1903(1)(i).

■ "Foster care placement" encompasses four prongs: (1) removing the Indian child from the child's parent or Indian custodian; (2) temporarily placing the child in a "foster home or institution or the home of a guardian or conservator" where; (3) the parent or Indian custodian cannot have the child returned upon demand; and (4) parental rights have not been terminated.

Prongs one, three, and four have been met in this case. A.K.H. is being removed from her parents, the parents cannot have the child back upon demand and parental rights are not being terminated. Thus, our focus is on whether A.K.H. will be temporarily placed in a "foster home or institution or the home of a guardian or conservator."

■ Minn.Stat. § 260.015, subd. 7 (1992) defines "foster care" as

the 24 hour a day care of a child in any facility which for gain or otherwise *regularly provides* one or more children,

when unaccompanied by their parents, with a substitute for the care, food, lodging, training, education, supervision or treatment they need but which for any reason cannot be furnished by their parents or legal guardians in their homes.

(Emphasis added.) We do not believe the grandmother's home is a "foster home" because she does not "regularly provide" for the care of children. Additionally, the grandmother's house cannot be considered an "institution." Therefore, to fall within the definition of "foster care placement," the grandmother's home must be considered the home of a "guardian" or "conservator."

The terms "guardian" and "conservator" are not defined in the Indian Child Welfare Act. Under state law, however, the guardian of a minor "has the powers and responsibilities of a parent." Minn.Stat. § 525.-619 (1992). For example, a guardian is empowered to facilitate the ward's education, social and other activities and to authorize medical care. *Id.*, § 525.619(c). A conservator for a minor has the power to provide for the needs of the child, including the duty to pay the reasonable charges for the support, maintenance and education of the child. Minn.Stat. § 525.6198(2) (1992) (with reference to Minn.Stat. § 525.56, subd. 4 (1992)).

A.K.H.'s grandmother would have these powers if she is awarded custody. We conclude, therefore, that the rights acquired by the grandmother as A.K.H.'s custodian would clearly encompass the terms "guardian" and "conservator." *Cf. In re S.B.R.*, 43 Wash.App. 622, 719 P.2d 154, 156 (Wash.App.1986) (rights acquired by custodian include rights of "guardian" and "conservator" "within any definition of those terms"). Thus, we hold that the placement of A.K.H. with her grandmother would be placement in the home of a "guardian or conservator" within the meaning of the Indian Child Welfare Act.

Accordingly, since all four prongs of the "foster care placement" test have been met, we conclude the proposed placement of A.K.H. with her grandmother is a "fos-

ter care placement" as defined by 25 U.S.C. § 1903(1)(i).

*Applicability of the Indian Child Welfare Act*

■ Having determined that this case involves a "foster care placement," we must look at the Indian Child Welfare Act in a broader context and determine whether it may apply to a purely intra-family custody dispute where all interested parties are enrolled members of an Indian tribe.

In passing the Indian Child Welfare Act, Congress found:

(1) that * * * Congress has plenary power over Indian affairs;

(2) that Congress * * * has assumed the responsibility for the protection and preservation of Indian tribes and their resources;

(3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;

(4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and

(5) that the States * * * have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.

25 U.S.C. § 1901. Therefore, in passing the Indian Child Welfare Act, Congress declared its policy was

to protect the best interests of Indian children and to promote the stability and security of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which

will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.

*Id.,* § 1902. *See also Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 32, 109 S.Ct. 1597, 1599–1600, 104 L.Ed.2d 29 (1989) (Act was product of rising concern over consequences of separation of Indian children from their families and tribes).

The applicability of the Indian Child Welfare Act to intra-family custody disputes is an issue of first impression in Minnesota. Courts in other states have decided this issue, although there is a split of authority among jurisdictions. The seminal case for the proposition that the Act does not apply to intra-family disputes is *In re Bertelson,* 617 P.2d 121 (Mont.1980).

In *Bertelson,* the mother of an Indian child gave custody of her child to the paternal grandparents, who were both enrolled members of an Indian tribe. When the mother sought to regain custody, the grandparents refused. The Montana Supreme Court held this dispute did not fall within the ambit of the Indian`Child Welfare Act stating:

> The Act is not directed at disputes between Indian families regarding custody of Indian children; rather, its intent is to preserve Indian culture values under circumstances in which an Indian child is placed in a foster home or other protective institution.

> \* \* \* \* \* \*

> The issue here is not which foster or adoptive home or institution will best "reflect the unique values of Indian culture \* \* \*." Rather, the present case involves an internal family dispute between the mother and the . paternal grandparents over custody of the child.

*Id.* at 125–26.

Several courts have expressly refused to follow the *Bertelson* analysis. In *A.B.M. v. M.H.,* 651 P.2d 1170 (Alaska 1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983), the Alaska Supreme Court stated the *Bertelson* rationale was contrary to the express provisions of the

Act. *Id.* at 1173, n. 6. The mother in *A.B.M.* sought to withdraw consent to the adoption of her child to her sister and brother-in-law and sought custody pursuant to the Indian Child Welfare Act. The district court refused to apply the Act. The Alaska Supreme Court reversed.

Although the court agreed that application of the Act was not required to preserve the child's ties to Indian culture or social values because the proposed adoptive parents were also Indians, the court focused on the fact that the Act makes no reference to exceptions for custody disputes within the extended family. Congress did, however, explicitly exclude custody disputes resulting from divorce proceedings and juvenile delinquency actions from the protections of the Act. *See* 25 U.S.C. § 1903(1). Thus the Alaska Supreme Court determined it could not create a "judicial exception to the Act's coverage." *A.B.M.,* 651 P.2d at 1173. The court stated that

> there were certain internal family disputes which Congress intended to except from the provisions of the Act. These exceptions were clearly expressed and we find no compelling basis for implying any others.

*Id.* Accordingly, the court determined custody must be determined in accordance with the Indian Child Welfare Act. *Id.* at 1176.

The Oklahoma Supreme Court in *In re Q.G.M.,* 808 P.2d 684 (Okla.1991), followed the same analysis stating:

> Recognition of a third exception—that the act will not apply to intra-family custody disputes—would require judicial legislation rather than statutory interpretation.

*Id.* at 688. *See also S.B.R.,* 719 P.2d at 156.

We believe the better-reasoned line of cases holds that the Indian Child Welfare Act does not exclude intra-family disputes. As the decisions in *A.B.M., Q.G.M.,* and *S.B.R.* point out, the only exceptions to the applicability of the Act are custody disputes in divorce actions and delinquency

proceedings. To hold that intra-family disputes are not subject to the Act would in effect create a third exception which would be contrary to law. *See* Minn.Stat. § 645.19 (1992) ("Exceptions expressed in a law shall be construed to exclude all others.").

Moreover, intervention by the Indian tribe in an intra-family dispute will further the purposes of the Act. Here, we are not dealing with a situation where an Indian child is potentially being removed from an Indian home to a non-Indian home. Thus, an argument can be made that the Act should not apply to this type of case. We believe, however, that such a view of the Indian Child Welfare Act is short-sighted. The fact that all the people seeking custody of A.K.H. are members of an Indian tribe does not suggest that each of the proposed custodians is equally capable of raising A.K.H. to respect the unique social and cultural environment of Indian life.

In evaluating the best interest of the child in a custody decision, the district court must consider the child's "cultural background." Minn.Stat. § 257.025(a)(11) (1992). Therefore, in the present case, the district court will necessarily require information regarding the proposed custodian's ability to impart the values of Indian culture. Such information can most likely be gleaned from a home study of the respective parties. The Leech Lake Band of Chippewa Indians professes it will do such a study if it is allowed to intervene.

While a home study could be done by the county social services department, many social workers are ignorant of Indian cultural values and social norms in judging the fitness of a particular family, and therefore make decisions wholly inappropriate in the context of Indian family life. H.R.Rep. No. 95–1386, 95th Cong., 2d Sess. 10, *reprinted in* 1978 U.S.C.C.A.N. 7530, 7532. Contributing to this problem has been the failure of state agencies to take into account the special problems and circumstances of Indian families. *Id.* at 7541. Non–Indian social workers cannot reasonably be expected to evaluate a proposed custodian from Indian cultural perspec-

tives, and therefore input from the Indian tribe is desirable when a state court makes a custody decision involving Indian children.

As the Commissioner of Indian Affairs stated in rejecting the *Bertelson* analysis:

> The Act is directed not only at control of the removal of Indian children from their homes, but also is intended to address problems caused by the failure of state courts and agencies to recognize the cultural and social standard prevailing in Indian communities.
>
> Lack of understanding of tribal culture can be as much of a problem when a state court adjudicates disputes among the family members of Indian children as when it is considering placing a child outside the family.

*In re L.A.C.*, 8 Indian L.Rep. (Am. Indian Law. Training Program) 5021, 5022 (1981) (citations omitted).

In no area is it more important that tribal sovereignty be respected than in an area as socially and culturally determinative as family relationships. *Holyfield*, 490 U.S. at 34, 109 S.Ct. at 1601 (citing Hearings on S. 1214 Before the Subcomm. on Indian Affairs and Public Lands of the House Comm. on Interior and Insular Affairs, 95th Cong., 2d Sess. (1978) (statement of Calvin Isaac, Tribal Chief of the Mississippi Band of Choctaw)). Nontribal governments often have no basis for intelligently evaluating the cultural and social premises underlying Indian home life and childrearing. *Id.*

It is generally in an Indian child's best interest that the child's relationship to its tribe be protected. *See* 25 U.S.C. § 1901(3). The Act therefore provides that Indian tribes are to play a central role in custody proceedings involving Indian children. If Indian tribes are to protect the values Congress recognized, they must be allowed to participate in proceedings in which those values are significantly implicated. *S.B.R.*, 719 P.2d at 156.

We believe state courts must make a strong effort to incorporate the customs and traditions of Indian tribes when the placement of Indian children is at issue.

Intervention by the Leech Lake Band of Chippewa Indians in this case will provide a vehicle for improving the information available to the district court and will assist the court in determining A.K.H.'s best interests. Accordingly, we conclude that the Indian Child Welfare Act does not exclude the intra-family custody dispute in the present case.

### Attorney Fees

■ The mother has moved this court for an award of attorney fees and costs pursuant to 25 U.S.C. § 1912(b) if this court reverses the district court and determines the Indian Child Welfare Act is applicable to this case. Section 1912(b) provides:

> In any case in which the court determines indigency, the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding.

Since we have determined the Act is applicable to this case, it is clear that under section 1912(b), the mother is entitled to the appointment of counsel, contingent on a showing of indigency. *See In re M.E.M.,* 195 Mont. 329, 635 P.2d 1313, 1317 (Mont. 1981) ("appointment of counsel in the case of an indigent parent is mandatory"); *State ex rel. Juvenile Dep't of Multnomah County v. Charles,* 70 Or.App. 10, 688 P.2d 1354, 1358 (Or.App.1984) (appointment of counsel dependent upon determination that parent is indigent).

Therefore, we remand this issue to the district court for a determination of the mother's indigency. If the district court determines that the mother is indigent, then she is entitled to her costs and attorney fees as requested in her motion.

### DECISION

The proposed placement of A.K.H. with her grandmother is a "foster care placement" within the meaning of the Indian Child Welfare Act. The Act does not exclude intra-family custody disputes. Therefore, the district court erred in determining that the Leech Lake Band of Chippewa

Indians does not have a statutory right to intervene in this custody proceeding.

**Reversed and remanded.**