**J.W., Appellant,**

v.

**R.J., Appellee.**

**No. S–7827.**

Supreme Court of Alaska.

Jan. 16, 1998.

---

[redacted]

Bonnie J. Coghlan, Fairbanks, for Appellant.

Daniel L. Callahan, Schendel & Callahan, Fairbanks, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

EASTAUGH, Justice.

## I. *INTRODUCTION*

The father and stepfather of a minor child are Alaska Natives who each seek custody of the child following her mother's death. The superior court awarded joint legal custody to the contestants, primary physical custody to the stepfather, and visitation to the father. While the father's appeal from that judgment was pending, the superior court modified the judgment and awarded physical and legal custody to the father. Because the child's tribe was not given an opportunity to intervene and the initial judgment was not supported by fact findings satisfying the test that controls a custody dispute between a parent and non-parent, we remand for further findings and for proceedings consistent with the Indian Child Welfare Act.

## II. *FACTS AND PROCEEDINGS*

S.R. was born in 1988. E.J. was her mother and J.W. was her father. S.R. had lived since infancy with her mother and her stepfather, R.J. E.J. and R.J. married in 1989. J.W. saw S.R. on her first birthday and did not see her again until August 1995. In 1995 R.J., the stepfather, filed for divorce from E.J.,[1] and sought legal and primary physical custody of S.R. J.W. contested custody. E.J., S.R.'s mother, had custody of S.R. until E.J. died in March 1996. The custody contest between the father, J.W., and the stepfather, R.J., then became the only remaining dispute.

Following E.J.'s death, the superior court gave the stepfather temporary custody, with visitation to the father. The superior court conducted a custody trial and in August 1996 entered judgment awarding shared legal custody to the father and stepfather, primary physical custody to the stepfather, and visitation to the father. The father appealed from that judgment, arguing that the court erred in failing to apply the Indian Child Welfare Act and that there was insufficient evidence under the state law standard to award custody to a non-parent. The father did not seek a stay when he filed his appeal.

Relevant events occurred after entry of the 1996 judgment. The state took custody of S.R. from September 4, 1996, to December 4, 1996, following a report that the stepfather had previously abused S.R. sexually. The state placed S.R. with her aunt in Fairbanks during this three-month period. S.R. was returned to her stepfather in Birch Creek on December 4, and remained there until December 18, when she traveled to Fairbanks for Christmas visitation with her father.

On January 9, 1997, the father, J.W., moved in the superior court for a stay pending appeal, alleging that the stepfather had sexually abused the child, and that she was at risk if she returned to his custody. J.W. also moved for expedited consideration.

1. E.J. and R.J., the stepfather, also had three other children whose custody is not in dispute here.

The court granted expedited consideration the next day, without giving the stepfather an opportunity to file an opposition. The superior court gave the stepfather until January 15 to respond to the underlying motion, but did not specify the child's custody in the meantime. When the father's lawyer called the judge's secretary and inquired whether S.R. was required to return to the stepfather's custody pending resolution of the motion, the court ordered that the child remain in Fairbanks while the matter was pending.

At a January 13, 1997, status hearing, the superior court orally denied the father's stay motion, but set a hearing for January 16 to determine "whether or not there are circumstances that now exist that place [S.R.] at risk in going back to Birch Creek."

On January 16 the father moved to modify custody. The superior court heard testimony on January 16 and 17 from the doctor who had examined S.R. in August 1996, the Alaska State Trooper who had interviewed her, and the two contestants. The superior court also accepted the report of the guardian *ad litem* (GAL). On January 17 the superior court issued an order modifying the August 1996 judgment. The order found that "[c]onsiderable confusion exists as to whether [S.R.] was ever sexually molested and, if so, when and by whom." The order also stated that "[t]he evidence before this court at this time does not suggest that [S.R.] is currently at risk in the [stepfather's] household." Nonetheless, the order found that a change of circumstances had occurred since the 1996 trial, and permanently modified the judgment by giving primary physical custody to S.R.'s father, with visitation to S.R.'s stepfather.

Several months later, over the stepfather's objection, the court ordered an *in camera* interview with S.R. The superior court *sua sponte* again permanently modified the custody order on May 15, 1997, giving sole legal custody to the father and decreasing the stepfather's visitation. The stepfather, R.J., appeals both 1997 modification orders on the theory that procedural errors denied him due process of law.

We here consider the father's appeal from the 1996 judgment and the stepfather's appeal from the 1997 modifications.

## III. DISCUSSION

### A. Standard of Review

 We will disturb the trial court's resolution of child custody issues only "if the record shows an abuse of discretion or if controlling findings of fact are clearly erroneous." *House v. House*, 779 P.2d 1204, 1207 (Alaska 1989) (citing *Faro v. Faro*, 579 P.2d 1377, 1379 (Alaska 1978)). Whether factual findings are sufficient to support an award of custody to a non-parent is a legal issue to which we apply our independent judgment. *R.R. v. State*, 919 P.2d 754, 755 n. 1 (Alaska 1996).

 The applicability of the Indian Child Welfare Act of 1978 to this proceeding is a question of law subject to our independent judgment. *In re T.N.F.*, 781 P.2d 973, 975 (Alaska 1989). We will "adopt the rule of law that is most persuasive in light of precedent, reason and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

### B. The Post–Judgment Modification Orders

The stepfather, R.J., argues that the superior court erred in 1997 by: (1) entering the order for expedited consideration without allowing him a reasonable time to oppose the motion; (2) amending the order for expedited consideration based on an *ex parte* contact with J.W.'s counsel; (3) modifying the judgment pending the outcome of a motion for a stay; (4) treating the motion for stay on appeal as a motion for modification; (5) admitting into evidence Dr. Marvin Bergeson's testimony about the child's identification of the perpetrator, Dr. Bergeson's report, and the GAL's testimony about the child's statements; (6) basing the January 1997 modification on issues not identified by the superior court before the hearing; and (7) permanently modifying the 1996 judgment without proper notice and hearing.

The father, J.W., argues not that the orders were entered without procedural error, but that any errors are mooted by correcting

the error of awarding custody to the stepfather in August 1996.

Our resolution of issues concerning the August 1996 judgment moots any need to consider questions about the procedural adequacy of the 1997 orders.[2]

### C. The August 1996 Judgment

#### 1. Was it an abuse of discretion to award custody of S.R. to her stepfather, R.J.?

■ The father, J.W., argues that the superior court improperly applied the Alaska standard for resolving a custody dispute between a parent and non-parent. He reasons that under *Turner v. Pannick*, 540 P.2d 1051 (Alaska 1975), and *Carter v. Novotny*, 779 P.2d 1195 (Alaska 1989), the superior court must find that the parent is unfit or that it would be harmful to the child's welfare to be placed with the parent before the non-parent is awarded custody. He claims that there is insufficient evidence to make this finding. The stepfather, R.J., argues that the superior court correctly applied the *Turner* standard and "clearly" found that "placement outside [R.J.]'s home would be detrimental to the child...."

■ *Turner v. Pannick* stands for the proposition that parental custody is preferable and only to be refused where it is clearly detrimental to the child. 540 P.2d at 1055. "Unless the superior court determines that the parent is unfit or has abandoned the child, or that the welfare of the child requires that the non-parent receive custody, the parent must be awarded custody."[3] *Id.* We reaffirmed these principles in *B.J. v. J.D.*, 950 P.2d 113 (Alaska 1997); *Rooney v. Rooney*, 914 P.2d 212, 216 n. 8 (Alaska 1996); *Buness v. Gillen*, 781 P.2d 985, 988–89 (Alaska 1989); *Carter*, 779 P.2d at 1197; and *Britt v. Britt*, 567 P.2d 308, 310 (Alaska 1977).

We agree with the father that the 1996 judgment is not supported by the fact findings necessary for an award of custody to a non-parent. The superior court recited the *Turner* standard, as set out in *Carter*, and also cited to *Buness*, but found that S.R.'s "psychological and emotional development, as well as her overall welfare, requires that this relationship [with her stepfather] not be traumatically interrupted." The superior court based this finding on the fact that S.R. had lived most of her life with her stepfather, that he had become her psychological father in many ways, and that he could provide her a stable home. The superior court found that S.R.'s father had not known her for most of her life and that they had just recently become reacquainted. Yet the superior court also found that both men are "fit parents who desire the best for [S.R.]." After determining that S.R.'s welfare required a parental role for the stepfather, the superior court then seemingly applied the statutory factors under AS 25.24.150 to determine that

---

**2.** Some of these issues may arise again, but the legal and factual contexts are likely to differ, rendering our present consideration premature. Nonetheless, the admissibility of Dr. Bergeson's testimony about S.R.'s identification of the alleged perpetrator is particularly likely to arise again. Although we do not decide whether the cited exceptions or other exceptions to the hearsay rule may apply, we note that *Sluka v. State*, 717 P.2d 394 (Alaska App.1986), and *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211 (Alaska 1991), offer guidance on this issue.

**3.** "In order to satisfy the 'welfare of the child' requirement, the non-parent must show that it clearly would be detrimental to the child to permit the parent to have custody." *Turner v. Pannick*, 540 P.2d 1051, 1054 (Alaska 1975). The nonparent has the burden of proving the detriment by a preponderance of the evidence. *Britt v. Britt*, 567 P.2d 308, 310 (Alaska 1977).

Both concurring opinions in *Turner* expressed reservations about courts' ability to distinguish between a "welfare of the child" test and a "best interests" test. *See Turner*, 540 P.2d at 1055 (Dimond, J., concurring); *Id.* at 1056 (Rabinowitz, C.J., concurring). Reservations about how the *Turner* standard and the parental preference are applied have been expressed on at least one occasion. *See Matson v. Matson*, 639 P.2d 298, 302 & n. 4 (Alaska 1982) (concern that the categorization between parent and non-parent may be undesirable) (Compton, J., dissenting). It has not been necessary for us to consider parties' arguments for a different standard. *See, e.g., Hayes v. Hayes*, 922 P.2d 896, 898 (Alaska 1996). The stepfather, R.J., does not argue that we should overturn *Turner*; he instead argues that the findings satisfied the *Turner* standard as refined in subsequent decisions. He argues that *Turner* "may be satisfied by a showing that placement outside the non-parent's home may be detrimental to the child *regardless* of the fitness of the biological parent."

it was in S.R.'s best interest that the stepfather have custody during the school year and that the father have custody during the school vacations.

■ There was no express finding that it would be detrimental for S.R. to be placed in her natural father's custody.[4] Although use of the word "detrimental" is not mandatory, the findings had to demonstrate that the *Turner* detriment standard was being applied. The court instead appears to have applied the best interest standard set out in AS 25.24.150. The court may have reasoned that the stepfather's assumption of an *in loco parentis* status gave him parental rights equal to the father's; its citation of *Buness* suggests that it may have considered that the relationship between the child and the stepfather conferred a parent-like standing on the stepfather that made it unnecessary to apply the *Turner* standard. Such an analysis, however, would have been contrary to the essential holding of *Turner*, that "parental custody . . . is preferable and only to be refused where clearly detrimental to the child." 540 P.2d at 1055. The relationship between the stepparent and the child, no matter how close, does not justify application of the best interests standard; the court may take the relationship into account, however, in deciding whether awarding custody to the biological parent would be detrimental to the child. Absent a finding in this case that the father is unfit, has abandoned the child or that the welfare of the child requires that a non-parent receive custody, the parental

preference controls. We therefore reverse the superior court's 1996 award of custody to the stepfather, R.J., and remand [5] for further proceedings consistent with this opinion.[6]

## 2. *Does the Indian Child Welfare Act apply here?*

■ It is undisputed that S.R., her father, and her stepfather are Alaska Natives. The August 1996 order, citing 25 U.S.C. § 1903(1), concluded that "the Indian Child Welfare Act [25 U.S.C. §§ 1901 *et seq.*] does not apply to this matter." The order did not explain the reason for that conclusion, but noted that "both parties are Indian." It appears no formal notice of the 1996 and 1997 custody proceedings was given to any Indian tribe, including the village which apparently considers S.R. to be a tribal member.[7]

The father, J.W., argues that it was error not to apply the Indian Child Welfare Act (ICWA) to the custody proceedings. He argues that before the superior court could place the child with her stepfather, it had to determine pursuant to § 1912(e) that there was clear and convincing evidence, including expert testimony, that serious emotional or physical damage would likely result if S.R. were placed with her father. He also argues that ICWA would not have applied if S.R. had been placed with him, S.R.'s father.

The stepfather, R.J., argues that ICWA does not apply. He alternatively asserts, however, that because he qualifies as S.R.'s

---

4. In context we interpret the court's finding that the child's welfare requires that her relationship with her stepfather "not be traumatically interrupted" to mean that any transfer of custody should be gradual rather than sudden, not that the child's welfare requires that she be permanently placed with her stepfather.

5. The father argues in his brief that there is insufficient evidence in the record to support a finding that placement with her father would be detrimental to S.R. We decline to decide that there is insufficient evidence as a matter of law. Moreover, the father's counsel acknowledged at oral argument that further proceedings may be necessary to determine custody under *Turner*. Also, for reasons discussed below, the child's tribe must be given an opportunity to address the fitness of the contestants.

6. Because they may be relevant to custody issues, the superior court on remand may consider post-judgment events in applying the proper standard.

7. The Native Village of Birch Creek (NVBC) moved to intervene in another proceeding concerning S.R., and filed with its motion a 1996 Dendu Gwich'in Tribal Council resolution declaring S.R. to be a tribal member of NVBC. NVBC never moved to intervene in the present custody dispute.

The Native Village of Fort Yukon (NVFY) moved to intervene in the present custody dispute in 1997, alleging that it was S.R.'s tribe. After initially granting the motion, the superior court ultimately denied it on the ground "the child . . . is a member of [NVBC] and is not a member of [NVFY]." NVFY did not appeal from the denial of its intervention motion.

"Indian custodian," he is entitled to receive the benefit of ICWA protections against removal of a child, and that applying ICWA for the father's benefit would lead to the "absurd result" of removing the child from her Indian custodian.

ICWA's protections, if applicable, include the clear and convincing burden of proof for removing an Indian child from a parent or Indian custodian [8] and a requirement that the child's Indian tribe be allowed to intervene in the proceeding.[9] 25 U.S.C. §§ 1911, 1912. The legislative history of ICWA reveals that Congress was concerned with two goals: protecting the best interests of Indian children and promoting the stability and security of Indian tribes and families. *See* H.R.Rep. No. 95–1386, at 8 (1978); *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 37, 109 S.Ct. 1597, 1602, 104 L.Ed.2d 29 (1989); *A.B.M. v. M.H.*, 651 P.2d 1170, 1172 (Alaska 1982). Although ICWA provides procedural protections for parents and Indian custodians, *see, e.g.,* § 1912(e) (imposing higher burden of proof for foster care placement), it also protects the tribes and the Indian children, *see, e.g.,* § 1911 (giving tribes exclusive jurisdiction in custody disputes on reservations, and the right to intervene in state court custody proceedings). Congress determined that tribal participation in custody proceedings would better reflect Native values, and that placement decisions would better reflect the best interests of Indian children. *See* 25 U.S.C. § 1901(5); *Holyfield*, 490 U.S. at 34–37, 109 S.Ct. at 1600–1602; H.R.Rep. No. 95–1386, at 10, 19 (1978). Applying ICWA to custody disputes between parents and non-parents allows the tribe an opportunity to intervene and offer its insight into the relative fitness of the contestants.

Congress was also concerned with state action, including judicial action, in custody decisions involving Indian children. *See* 25 U.S.C. § 1901(5); H.R.Rep. No. 95–1386, at 19 (1978). Although our state standard for awarding custody of a child to a non-parent is higher than the best interests standard usually applied in custody disputes, ICWA imposes an even higher standard of proof before an Indian child may be removed from the custody of a parent or Indian custodian.[10]

ICWA applies to "child custody proceedings" involving an Indian child. 25 U.S.C. § 1903(1)(i)-(iv). The only type of "child custody proceeding" relevant here is a "foster care placement," which ICWA defines as:

> any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated.

25 U.S.C. § 1903(1)(i). The definition contains four requirements: (1) an action removing an Indian child from its parent or Indian custodian,[11] (2) temporary placement in a foster home, institution, or home of a guardian or conservator, (3) inability of the parent or Indian custodian to have the child returned upon demand, and (4) absence of termination of parental rights. The last three

---

**8.** 25 U.S.C. § 1912(e) provides:

No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

**9.** 25 U.S.C. § 1911(c) provides:

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.

**10.** State law requires the non-parent to prove by a preponderance standard that parental placement would be detrimental to the child. *See supra* note 3. ICWA requires that an order for foster care placement must be supported by clear and convincing evidence of likely serious emotional or physical damage to the child if he or she remains with the parent. 25 U.S.C. § 1912(e).

**11.** " 'Indian custodian' means any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such child." 25 U.S.C. § 1903(6).

requirements clearly existed here: S.R.'s 1996 placement with the stepfather was a temporary placement in the home of a guardian; [12] after the court awarded custody to the stepfather, the father could not obtain S.R.'s return upon demand; and no parental rights had been terminated.

It also appears that this case involves "an action removing an Indian child from its parent or Indian custodian." All proceedings thus far involved the potential, if not actual, removal of the child from the father. Although he did not previously have physical custody, the proceedings still removed the child from the father's legal custody. *See In re Adoption of a Child of Indian Heritage,* 111 N.J. 155, 543 A.2d 925, 937 (1988) (stating that phrase, "from whose custody such child was removed," in § 1914 refers to legal rather than actual physical custody of child); *In re Welfare of W.R. and A.R.,* 379 N.W.2d 544, 549 (Minn.App.1986) (finding § 1912 provision of "the continued custody of the child by the parent" does not refer to the physical custody of the child); *In re Adoption of Baade,* 462 N.W.2d 485, 490 (S.D. 1990) ("the custody referred to in § 1912(f) is legal rather than physical custody"). We consequently conclude that the custody proceeding was a "foster care placement" within the meaning of ICWA, § 1903(1)(i).

The stepfather argues that ICWA does not apply because its purpose is "to restrict placements outside the Indian home and away from the existing family thereby causing the breakup of the Indian family." [13]

This reading of ICWA's purpose is too narrow. As we noted above, one purpose of ICWA is to permit tribal participation in state custody proceedings. This purpose is advanced by permitting the child's tribe to express its preference or comment on the relative fitness of the contestants. This opportunity increases the likelihood non-Indians will recognize and appreciate cultural and social values thought by the tribe to be important in resolving the custody dispute.

Similar proceedings have been held to be foster care placements. The New Mexico Court of Appeals found that the placement of children after a parent's death was a foster care proceeding under ICWA because the children had not been placed with their aunt, who was their Indian custodian under tribal custom, and therefore were "removed" from her. *In re Ashley Elizabeth R.,* 116 N.M. 416, 863 P.2d 451, 453 (N.M.App.1993). Other courts, while not specifically addressing the "removal" issue, have held that ICWA applied to custody disputes between parents and non-parents. *See In re Custody of A.K.H.,* 502 N.W.2d 790, 792–93 (Minn.App. 1993) (finding that custody dispute between parents and grandparents was a foster care proceeding and that ICWA applied); *In re Custody of S.B.R.,* 43 Wash.App. 622, 719 P.2d 154, 156 (1986) (same).

The stepfather also argues that this dispute falls within the exclusion to ICWA for custody disputes between parents in a divorce proceeding. 25 U.S.C. § 1903(1). He reasons that this dispute is really the equiva-

---

**12.** The stepfather argues that placement with him was not a placement in a "foster home or institution or the home of a guardian or conservator." He was, however, legally S.R.'s guardian or conservator when she was with him under the 1996 custody orders because he is not her natural or adoptive father. While ICWA does not define "guardian," the rights he acquired under the 1996 orders brought him within the common definition of the term. *See Webster's New World Dictionary* at 620 (1972) (defining "guardian" as "(1) a person who guards, protects, or takes care of another person … (2) a person legally placed in charge of the affairs of a minor"). *See also In re Custody of A.K.H.,* 502 N.W.2d 790, 792–93 (Minn.App.1993) (finding that placement with grandparent was placement with guardian or conservator); *In re Custody of S.B.R.,* 43 Wash.App. 622, 719 P.2d 154, 156 (1986) (same).

**13.** R.J., the stepfather, similarly argues that ICWA does not apply to this case because it is an "intra-family custody dispute." These arguments originate in *In re Bertelson,* 189 Mont. 524, 617 P.2d 121, 125–26 (1980), which held that ICWA did not apply to a custody dispute between a parent and the grandparents because it was not intended to apply to "internal family disputes." We declined to follow *Bertelson* in *A.B.M. v. M.H.,* 651 P.2d 1170, 1173 n. 6 (Alaska 1982).

The stepfather also argues that applying ICWA for the father's benefit "would cause the absurd result" of removing S.R. from her existing Indian family and from the custody of her Indian custodian.

lent of a custody dispute between two parents because he was S.R.'s Indian custodian and psychological parent, who has acted *in loco parentis* for most of her life, and who may be treated as a parent under state law.

The child custody proceedings to which ICWA applies do "not include a placement based . . . upon an award, in a divorce proceeding, of custody to one of the parents." 25 U.S.C. § 1903(1). ICWA defines "parent" to mean "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom. It does not include the unwed father where paternity has not been acknowledged or established." 25 U.S.C. § 1903(9). Neither stepparents acting *in loco parentis* nor Indian custodians are included in this definition. Furthermore, "stepparent" is included in the definition of "extended family member." [14] 25 U.S.C. § 1903(2). A "stepparent" is clearly not a "parent" within ICWA usage, and therefore a dispute between a parent and stepparent does not fall within the ICWA exclusion for custody disputes between parents.

We conclude that ICWA applied to the proceedings below. Because the April 1996 interim custody order and the August 1996 judgment violated the provisions of § 1911 and possibly § 1912, they must be vacated and this case remanded for further proceedings consistent with ICWA. 25 U.S.C. § 1914.[15]

The effects of this conclusion are not completely clear. Certainly the superior court proceedings removed the child from the legal custody of a parent or Indian custodian without giving the child's tribe an opportunity to participate. As a result, any findings weighing the fitness, of the contestants were made without benefit of the tribe's comments. That deficiency can be remedied only if the proper tribe is given notice and the opportunity to participate on remand.

The father invokes § 1912(e) for its requirement of "clear and convincing" evidence before an Indian child is removed from a parent or Indian custodian. The stepfather argues that if ICWA does apply, he qualifies as the Indian custodian, and therefore is also entitled to the benefit of the ICWA protections.

It is unclear whether the stepfather is an Indian custodian. Although the stepfather alternatively argued below that he qualified as the child's Indian custodian, he does not appear to have sought a finding of fact to that effect. On remand, the superior court must determine whether the stepfather was S.R.'s "Indian custodian" within the meaning of § 1903(6).[16]

If the stepfather does not establish that he was the child's Indian custodian, he has no arguable right to invoke the ICWA heightened standard of proof. Instead, the father will have the benefit of § 1912(e).

A finding on remand that the stepfather is the child's Indian custodian will squarely raise the legal question whether § 1912(e) applies reciprocally in a dispute between a parent and Indian custodian. Subsection 1912(e) expresses a strong preference for

---

**14.** 25 U.S.C. § 1903(2) provides:

"Extended family member" shall be as defined by the law or custom of the Indian child's tribe or, in absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.

**15.** 25 U.S.C. § 1914 provides in pertinent part: [A]ny parent or Indian custodian from whose custody such child was removed . . . may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

**16.** 25 U.S.C. § 1903(6) defines "Indian custodian" as:

[A]ny Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such a child.

The stepfather may be the child's Indian custodian under tribal law or custom, or because the mother transferred physical care, custody, and control of the child to the stepfather. The stepfather may also be an Indian custodian under state law, but because the April 1996 order and August 1996 judgment are vacated, the court should not consider whether he was an Indian custodian under those orders.

custody "by the parent or Indian custodian." The subsection treats parents and Indian custodians as coequals, as does the definition of "foster care placement" in § 1903(1)(i). No section of ICWA indicates that Congress preferred a parent to an Indian custodian if the parent did not previously have physical custody. Although § 1916 states that the protections of ICWA do not apply when an Indian child is removed from a foster care home and returned to the parent or Indian custodian from whose custody the child was originally removed, we cannot assume that Congress generally preferred parents to Indian custodians.

The purposes behind ICWA are consistent with restricting § 1912(e) to disputes between persons having favored status—parents and Indian custodians—and others who are neither parents nor Indian custodians. There would appear to be no logical reason consistent with the statutory purpose to apply § 1912(e) in a contest between two equally favored contestants. We therefore hold that if the stepfather proves on remand that he is S.R.'s Indian custodian, § 1912(e) will not apply and the superior court should instead apply the Alaska standard for custody disputes between parents and non-parents discussed in Part III.C.1.[17] *See* 25 U.S.C. § 1921 ("In any case where State or Federal law ... provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.").

## IV. *CONCLUSION*

Because the 1996 judgment was not based on the fact findings required by state law for awarding custody of the child to the stepfather, and because the provisions of ICWA were not applied in the proceedings below, we VACATE the May 15, 1997, Second Modification of Judgment and the August 28, 1996, Findings of Facts, Conclusions of Law, and Judgment, and REMAND for further

proceedings to determine under state law whether placement with the father would be clearly detrimental to S.R. Because ICWA applies to this dispute, the child's tribe must be given an opportunity to participate in those proceedings and offer evidence on the fitness of the contestants and on the issue of whether the stepfather, R.J., is an Indian custodian. Any such evidence may be considered in applying the *Turner* standard.

If the superior court concludes under *Turner* that it would be clearly detrimental to the child to return her to her father, the court will next have to determine whether the father is entitled to the benefit of the "clear and convincing" standard of 25 U.S.C. § 1912(e). Unless it finds that the stepfather is S.R.'s "Indian custodian" under 25 U.S.C. § 1903(6), the court cannot award custody to the stepfather unless he satisfies § 1912(e). If the stepfather was S.R.'s Indian custodian, the ICWA statutory preference will not apply, and custody will turn on the outcome of the *Turner* ruling.

---

17. It is not inconsistent to apply the state law parental preference here, because we are simply reading the § 1912(e) standard to be inapplicable; ICWA does not clearly express a policy that forbids the state from applying a preference for

the claim of the biological parent whose rights have not been terminated by the child's tribe. This case does not involve a ruling by a tribal court that terminates the father's custodial rights in favor of the stepfather.