*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STEVEN D., | ) | |
| | ) | Supreme Court No. S-14792 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-01-12605 CI |
| v. | ) | |
| | ) | O P I N I O N |
| NICOLE J., | ) | |
| | ) | No. 6812 – August 16, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: John C. Pharr, Law Offices of John C. Pharr, Anchorage, for Appellant. Phyllis Shepherd and Stephanie Patel, Law Offices of Dan Allan and Associates, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Stowers, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

FABE, Chief Justice.

I.      INTRODUCTION

A woman living in Alaska filed a petition in Alaska to enforce summer visitation with her son, who lives in Tennessee with his father. After the superior court resolved the visitation issue, the father appealed, arguing that the superior court lacked jurisdiction to hear the case or, in the alternative, that the superior court should have

voluntarily ceded jurisdiction to Tennessee because Alaska is an inconvenient forum. We conclude that the superior court had jurisdiction to hear the case and did not abuse its discretion by deciding that Alaska is not an inconvenient forum.

## II.     FACTS AND PROCEEDINGS

Steven D. and Nicole J.[1] were married in 1994 in Fairbanks and have two children, Christopher and Warren. After seven years of marriage, Steven filed a petition for a protective order against his wife in Alaska, alleging that Nicole had physically attacked him and Christopher, and that Nicole had disappeared with the children for weeks at a time. Two weeks later, Steven filed a divorce complaint in superior court in Alaska.

The superior court found that Nicole represented a credible threat to the physical safety of Steven and the children and granted Steven's petition for a protective order. In 2004, after litigating the divorce action in Alaska for several years, Steven and Nicole reached a settlement granting Steven joint legal custody and primary physical custody of the children in Tennessee, where he had since moved. During the summer and at other specified times, the children were to fly to Alaska to visit Nicole. The settlement agreement was approved by the superior court in March 2004.

In May 2012 Nicole filed a motion in Alaska to enforce visitation, claiming that Steven had refused to surrender the children for summer visitation when she flew to Tennessee to collect them. The next day, a Tennessee circuit court issued an ex parte order exercising temporary emergency jurisdiction over the children and preventing the children from being removed from Steven's care until either the Tennessee circuit court or the superior court in Alaska had conducted a full hearing. Steven filed an opposition

---

[1]     To protect the family's privacy, we use initials instead of full last names.

to Nicole's motion to enforce visitation in Alaska and moved to transfer jurisdiction over the proceedings to Tennessee.

In June 2012 the superior court in Alaska held a hearing on the motion to enforce visitation as to Warren.[2] The superior court found that it had continuing and exclusive jurisdiction over the case under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and declined to transfer jurisdiction to Tennessee. After hearing testimony from Steven and Nicole and Nicole's husband, the superior court ruled that it would enforce summer visitation if Nicole could pass a drug test.

Nicole waited about three weeks before taking and passing a hair follicle test as ordered by the superior court. After giving Nicole an opportunity to explain the delay, the superior court found that she had not justified her failure to obtain a timely drug test. The court ruled that summer visitation in 2012 would not occur, but that visitation over Christmas break might occur if Nicole could take and pass a drug test within a month prior to the scheduled visit. At Steven's request, the superior court committed to writing its decision to deny Steven's motion to transfer jurisdiction to Tennessee.

Despite prevailing below on his opposition to Nicole's motion, Steven now appeals the superior court's order, arguing that the court lacked jurisdiction under the UCCJEA or, in the alternative, that the superior court should have voluntarily ceded jurisdiction as an inconvenient forum to Tennessee. Steven raises no other issues on appeal.

---

[2] Christopher turned 18 two days after Nicole filed her motion to enforce visitation, and the superior court recognized that he is no longer subject to the visitation schedule laid out in the settlement agreement.

## III.  STANDARD OF REVIEW

Whether a court can exercise jurisdiction under the UCCJEA is a question of law, which we review de novo.[3]  A superior court's decision to decline, or to refuse to decline, jurisdiction as an inconvenient forum is reviewed for abuse of discretion.[4]  An abuse of discretion is found only if we are left with a "definite and firm conviction" that a mistake has been made.[5]

## IV.  DISCUSSION

### A.  The Superior Court Had Jurisdiction Under The UCCJEA.

#### 1.  The superior court retained jurisdiction because substantial evidence related to the dispute remains in the state.

Alaska Statute 25.30.310 grants exclusive, continuing jurisdiction over a child custody case to the court that made the initial child custody determination (in this case the superior court in Alaska) until certain conditions are met.[6]  If both parents and the child move out of state, the superior court loses jurisdiction.[7]  In this case, Nicole remains in Alaska.  If one parent remains in the state, the superior court retains jurisdiction until it finds that the child no longer has a significant connection to the state and that substantial evidence regarding "the child's care, protection, training, and

---

³  *Atkins v. Vigil*, 59 P.3d 255, 256-57 (Alaska 2002) (per curiam) (citations omitted).

⁴  *Mikesell v. Waterman*, 197 P.3d 184, 186 (Alaska 2008) (citing *Pinneo v. Pinneo*, 835 P.2d 1233, 1235 (Alaska 1992)).

⁵  *Id.* (citing *Sawicki v. Haxby*, 186 P.3d 546, 550 (Alaska 2008)).

⁶  AS 25.30.310(a).

⁷  AS 25.30.310(a)(2).

personal relationships" is no longer available in the state.[8]   The question in this case is whether substantial evidence relevant to summer visitation is available in Alaska.

The superior court concluded that substantial relevant evidence was available in Alaska because the dispute revolved around Nicole's drug use and conditions in her home:

> While the children and [Steven] no longer live in Alaska, [Nicole] does.  And the allegations raised in the motion now before the court primarily involve evidence of matters in Alaska (i.e. drug use, living conditions, lack of proper hygiene in mother's home).  The court thus finds that substantial evidence remains available in this state regarding the child's care.

We review the superior court's determination that substantial evidence related to the dispute was available in Alaska for abuse of discretion.[9]

The allegations Steven made opposing Nicole's motion to enforce visitation support the superior court's finding.  In his opposition, Steven argued that Nicole should not be allowed to have visitation for several reasons specific to Alaska, including that

- Warren has returned from Nicole's house with ringworm and fungal infections.

- Warren and Christopher reported illegal drug use in Nicole's home while they were there.

- Nicole's mentally unstable sister lives with her and has threatened the children.

---

[8]   AS 25.30.310(a)(1).

[9]   *See Clifton v. Shannon*, 93 So. 3d 70, 72 (Miss. App. 2012) (citing *White v. White*, 26 So. 3d 342, 346-48 (Miss. 2010)) (committing the factual question whether substantial evidence was available in the state to the discretion of the lower court).

- Nicole has a significant criminal history in Alaska.

- Nicole has the means to hide the children and has done so in the past.

Steven's only allegation specific to conduct in Tennessee was that Nicole arrived in Tennessee before her scheduled visitation and "made an embarrassing scene."[10]

Steven argues that the evidence available in Alaska relates only to Warren's care, not his "protection, training, and personal relationships."[11] Evidence of Warren's "protection, training, and personal relationships," Steven argues, is in Tennessee, Warren's home for nearly a decade.

But the only question before the superior court was whether it is safe for Warren to visit his mother in Alaska. Adverse or dangerous conditions in Nicole's home could certainly affect his "care, protection, training, and personal relationships" if visitation were enforced. Therefore, the superior court did not abuse its discretion by concluding that substantial evidence remains in Alaska.

The present case can be distinguished from one in which the conditions in both homes must be evaluated and compared, such as a more general modification of the custody arrangement. Where one party alleges changed conditions, for example, the court must engage in a careful examination of the best interests of the child by comparing

---

[10] Steven also made other allegations that were not specific to either state. He alleged that Warren does not wish to visit his mother in Alaska, that Warren is fearful of Nicole, and that Nicole is generally combative and abusive toward the children.

[11] *See* AS 25.30.310(a)(1).

the quality of care offered in both homes.[12] In such a case, substantial relevant evidence may not be present in Alaska.

Steven cites several foreign cases to argue that the trial court erred by finding that substantial evidence remains in Alaska.[13] But those cases merely demonstrate that courts do not have jurisdiction when there is no significant connection to or substantial evidence in the state.[14] They do not show that the superior court erred in this case by finding that substantial evidence is available in Alaska.

We conclude that the superior court did not abuse its discretion by finding that the most relevant and important factor in modifying the custody agreement was the safety of Nicole's home or by finding that evidence of the conditions in Nicole's home was available in Alaska. Therefore, the superior court had exclusive jurisdiction over the case because Nicole lives in Alaska and "substantial evidence remains available in this state regarding the child's care."[15]

---

[12] *See* AS 25.20.110(a), (g) (authorizing the court to modify custody if required by a change in circumstances and requiring the court, when doing so, to consider the factors set out in AS 25.24.150(c)).

[13] *See Kalman v. Fuste*, 52 A.3d 1010 (Md. Spec. App. 2012); *Billhime v. Billhime*, 952 A.2d 1174 (Pa. Super. 2008); *Clark v. Clark*, 801 N.Y.S.2d 863 (N.Y. App. Div. 2005); *M.B. II v. M.B.*, 756 N.Y.S.2d 710 (N.Y. Fam. 2002); *In re Marriage of Medill*, 40 P.3d 1087 (Or. App. 2002).

[14] *See, e.g.*, *Billhime*, 952 A.2d at 1177 (finding that a Pennsylvania court lacked jurisdiction because, in addition to lacking a significant connection to the state, "essentially all of the evidence presented at the evidentiary hearing demonstrates that information relating to the children's welfare is now located in the state of Florida").

[15] *See* AS 25.30.310(a)(1).

### 2. Steven's arguments that the superior court lost continuing and exclusive jurisdiction are not persuasive.

Steven also argues that, regardless of where the relevant evidence was located, the superior court lost continuing and exclusive jurisdiction of the case. First, Steven argues that the superior court lost jurisdiction because of Warren's lengthy absence from the state. Second, Steven argues that the superior court's exercise of jurisdiction was improper in the face of Tennessee's temporary assumption of emergency jurisdiction. We conclude that neither argument has merit.

#### a. The superior court did not lose jurisdiction because of Warren's lengthy absence from the state.

Steven briefly argues that AS 25.30.310(a) only allows the superior court to exercise jurisdiction in this case if it finds both that the child has a significant connection to Alaska and that substantial evidence remains in Alaska. The implied argument is that jurisdiction should fail in Alaska even if substantial evidence remains here because, due to their lengthy absence from Alaska, Warren and his father no longer have a significant connection to the state.

But AS 25.30.310(a)(1) is not a list of requirements that must be fulfilled to *retain* jurisdiction, it is a list of requirements that must be fulfilled to *lose* jurisdiction. The plain language of the statute requires an absence of both a significant connection to the state and substantial evidence before jurisdiction is relinquished:

> (a)     Except as otherwise provided in AS 25.30.330, a court of this state that has made a child custody determination consistent with AS 25.30.300 or 25.30.320 has exclusive, continuing jurisdiction over the determination until
>
> (1)     a court of this state determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state *and* that substantial evidence is no longer available in this

state concerning the child's care, protection, training, and personal relationships.[16]

Unless the court finds that both elements are lacking, Alaska retains exclusive, continuing jurisdiction.[17]

Steven also argues that the legislative history of the UCCJEA and the related Parental Kidnapping Prevention Act compel the conclusion that those statutes do not allow an Alaska court to retain jurisdiction where the child has resided in a different state for a long time. "When interpreting statutes we use a sliding-scale approach, under which the clearer the statutory language is, the more convincing legislative history must be to justify another interpretation."[18] The legislative history in this case is not convincing.

First, Steven cites portions of the Parental Kidnapping Prevention Act. But that Act specifies that the state that made an initial custody determination (in this case Alaska) retains jurisdiction as long as the state has jurisdiction under state law and at least one contestant (in this case Nicole) remains in the state.[19] Because the Act simply defers to state jurisdictional requirements, it fails to advance the analysis in this case.

---

[16] AS 25.30.310(a)(1) (emphasis added).

[17] *See Misyura v. Misyura*, 244 P.3d 519, 521 (Alaska 2010) (citing AS 25.30.310) (noting that the superior court retained jurisdiction over the parties and their children despite one parent's move out of state with the children); *E.H. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 23 P.3d 1186, 1192 (Alaska 2001) (discussing AS 25.30.310(a)(1) as a single condition that could terminate jurisdiction, not as two independent conditions, either of which could terminate jurisdiction).

[18] *Interior Cabaret, Hotel Restaurant & Retailers Ass'n v. Fairbanks N. Star Borough*, 135 P.3d 1000, 1002 (Alaska 2006) (citing *Bartley v. State, Dep't of Admin., Teachers' Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005)).

[19] 28 U.S.C. § 1738A(d) (2006).

Second, Steven cites pieces of legislative history discussing the purpose of the UCCJEA.[20]  But these sources say only that the UCCJEA was enacted to resolve conflicting jurisdictional requirements between states.[21]  They are not relevant to the issue at hand.

Finally, Steven cites statements of Assistant Attorney General Deborah Behr before the Alaska Legislature about the workings of the UCCJEA.[22]  Behr stated that "[i]f the child has been out of state for a long time and there is better information elsewhere, the Alaska Court could defer jurisdiction to another state."[23]  But Behr was testifying about the courts' discretionary power to cede jurisdiction as an inconvenient forum under AS 25.30.360, an issue discussed below.  We do not believe that she was suggesting that an Alaska court can never have jurisdiction if "the child had been out of state a long time," especially where substantial evidence pertaining to that child's care remains in Alaska.  We therefore conclude that the legislative history Steven presents is insufficient to override the clear language of the statute.

---

[20]  *See* UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT (1997), at 3 (Nov. 20, 1998), *available at* http://www.uniformlaws.org/shared/docs/child_custody_jurisdiction/uccjea_final_97.pdf; Minutes, H. Health, Educ. & Soc. Servs. Comm. Hearing on H.B. 335, 20th Leg., 2d Sess. (Jan. 29, 1998) (statement of Deborah Behr, Assistant Attorney Gen.).

[21]  *See supra* note 20.

[22]  *See* Minutes, S. Health, Educ. & Soc. Servs. Comm. Hearing on H.B. 335, 20th Leg., 2d Sess. (Mar. 25, 1998) (statement of Deborah Behr, Assistant Attorney Gen.); Minutes, H. Judiciary Standing Comm. Hearing on H.B. 335, 20th Leg., 2d Sess. (Feb. 23, 1998) (statement of Deborah Behr, Assistant Attorney Gen.); Minutes, H. Health, Educ. & Soc. Servs. Comm. Hearing on H.B. 335, 20th Leg., 2d Sess. (Jan. 29, 1998) (statement of Deborah Behr, Assistant Attorney Gen.).

[23]  Minutes, S. Health, Educ. & Soc. Servs. Comm. Hearing on H.B. 335, 20th Leg., 2d Sess. (Mar. 25, 1998) (statement of Deborah Behr, Assistant Attorney Gen.).

**b.** **The superior court's failure to communicate with the Tennessee court about its assumption of temporary emergency jurisdiction did not divest the superior court of continuing jurisdiction.**

Steven also argues that the superior court's exercise of jurisdiction was improper in the face of Tennessee's temporary assumption of emergency jurisdiction. Steven contends that, after learning of the proceeding in Tennessee, the superior court in Alaska should have stayed its proceedings to communicate with the Tennessee judge. The superior court's failure to do so, Steven argues, warrants reversal. But Steven has failed to show that this lapse, if erroneous, was reversible error.

The Tennessee court entered an ex parte order asserting temporary emergency jurisdiction on May 31, 2012, the day after Nicole filed a motion in Alaska to enforce her visitation. The order stated that the Tennessee court would contact the tribunal in Alaska to determine when a hearing could be held, and the order was set to expire June 22, 2012 or whenever a subsequent order was entered. On June 14, the superior court in Alaska held a hearing on Nicole's motion to enforce visitation.

An exercise of temporary emergency jurisdiction conveys only limited power to make temporary orders necessary to protect a minor during an emergency.[24]

---

[24] *See, e.g.*, *In re Briana C.*, 2006 WL 2349189, at *1 (Cal. App. 2006); *see also In re Jorge G.*, 78 Cal. Rptr. 3d 552, 557 (Cal. App. 2008) (holding that the assumption of temporary emergency jurisdiction pursuant to the UCCJEA does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition); *Olson v. Olson*, 2002 WL 31056935, at *3 (Minn. App. 2002) (noting that custody determinations made under the temporary emergency jurisdiction provision of the UCCJEA are temporary and their purpose is to protect a child until an order is entered by a court with exclusive, continuing jurisdiction or jurisdiction under either of two other provisions allowing a permanent custody determination); *In re E.J.*, 738 S.E.2d 204, 207 (N.C. App. 2013) (holding that, when exercising temporary emergency jurisdiction, any orders entered shall be temporary

(continued...)

An exercise of temporary emergency jurisdiction by a foreign court does not destroy jurisdiction in the court that made the initial custody order: "The court that entered the initial custody order can: (1) retain jurisdiction and decide whether to modify its initial order, (2) decline to exercise jurisdiction in favor of a court with a more convenient forum, or (3) decline to exercise jurisdiction because the petitioner 'engaged in unjustifiable conduct.' "[25]

The court assuming temporary emergency jurisdiction must communicate with the court that made the initial custody order.[26] And the court that made the initial custody order should, upon learning of a foreign court's assumption of temporary emergency jurisdiction, communicate with the foreign court.[27] "Simply put, [the temporary emergency jurisdiction provision] requires both courts to communicate with each other."[28] The purpose of this communication is to "resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order."[29]

---

[24](...continued)
protective orders only); *Staats v. McKinnon*, 206 S.W.3d 532, 546 n.31 (Tenn. App. 2006) (recognizing that emergency jurisdiction is inherently temporary in nature and does not, as a general rule, authorize courts to make permanent child custody decisions).

[25]     *In re Ruff*, 275 P.3d 1175, 1182 (Wash. App. 2012) (citing Washington's version of AS 25.30.320, .360, and .370).

[26]     *See* AS 25.30.330(d); T.C.A. § 36-6-219(d); *see also In re Ruff*, 275 P.3d at 1181.

[27]     *See* AS 25.30.330(d); T.C.A. § 36-6-219(d).

[28]     *In re Ruff*, 275 P.3d at 1181.

[29]     AS 25.30.330(d).

In this case, the Tennessee court did not contact Judge Mark Rindner, nor did Judge Rindner contact the Tennessee court. Steven asks us to conclude that a mutual failure to communicate in this case required the Alaska court to yield jurisdiction to a foreign court asserting only temporary jurisdiction for a limited purpose.

But Steven offers no support for his conclusion that failure to communicate constitutes reversible error. The ex parte order from the Tennessee court clearly indicated that it was responsible for contacting Judge Rindner, although the best practice would have been for Judge Rindner to contact the Tennessee court as well. In any event, the hearing in Alaska was held promptly, before the expiration date contemplated in the emergency jurisdiction order. Steven has not shown that communication between the two judges would have affected this hearing schedule. Nor can Steven, having prevailed on the merits in the visitation enforcement action, show that he was prejudiced in the result.[30] We therefore conclude that the superior court's failure to contact the Tennessee court was not reversible error in this case.

## B. The Superior Court Did Not Abuse Its Discretion By Refusing To Cede Jurisdiction To Tennessee As An Inconvenient Forum.

Steven argues that the superior court abused its discretion by failing to cede jurisdiction to Tennessee under AS 25.30.360, which allows a court to decline to exercise jurisdiction if it "determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum."[31] In particular, Steven argues that the superior court erred by denying his inconvenient forum motion without sufficiently discussing the relevant statutory factors. We disagree.

---

[30] *See In re C.T.*, 121 Cal. Rptr. 2d 897, 906 (Cal. App. 2002) (holding that failure to communicate did not warrant reversal where there was no showing of prejudice).

[31] AS 25.30.360(a).

Alaska Statute 25.30.360(b) states that, when ruling on an inconvenient forum motion, "the court . . . shall consider all relevant factors," including:

(1)    whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2)    the length of time the child has resided outside this state;

(3)    the distance between the court in this state and the court in the state that would assume jurisdiction;

(4)    the relative financial circumstances of the parties;

(5)    an agreement of the parties as to which state should assume jurisdiction;

(6)    the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7)    the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8)    the familiarity of the court of each state with the facts and issues in the pending litigation.[32]

In *Szmyd v. Szmyd*, we held that it was an error under the Uniform Child Custody Jurisdiction Act (the precursor to the current UCCJEA) for a court to deny an inconvenient forum motion without articulating its reasoning.[33] Without a sufficiently thorough discussion of the superior court's reasoning, it is "difficult to determine whether the court abused its discretion, that is, to determine whether it considered the

---

[32]    AS 25.30.360(b).

[33]    641 P.2d 14, 19 (Alaska 1982).

statutory factors, or what interpretation it placed on the facts."[34]  Although *Szmyd* was discussing an earlier statute with a different set of factors, the requirement that the superior court articulate its reasoning for denying an inconvenient forum motion remains good law.[35]

Because the hearing was limited to the narrow question of whether summer visitation at Nicole's home should be enforced, we conclude that the determinative factor in this case was the sixth factor, "the nature and location of the evidence required to resolve the pending litigation."[36]  The superior court made sufficient findings to allow us to conclude that it considered this statutory factor.  It found that "in light of the allegations made by [Steven] regarding [Nicole], Alaska is not an inconvenient forum." Read in context, the superior court was clearly referencing its earlier finding that "substantial evidence remains available in this state regarding the child's care."  And while the superior court's findings and discussion could have been more detailed, addressing all of the factors, it was enough to address only the "pertinent and potentially determinative factors."[37]  We therefore conclude that the superior court did not abuse its discretion by denying Steven's inconvenient forum motion.

---

[34]     *Id.*

[35]      *Cf. Mikesell v. Waterman*, 197 P.3d 184, 190 (Alaska 2008) (citing another holding in *Smzyd* as good law).

[36]     AS 25.30.360(b)(6).

[37]     *Virgin v. Virgin*, 990 P.2d 1040, 1047 (Alaska 1999) (quoting *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 138 (Alaska 1997)) (internal quotation marks omitted) (holding that "searching for errors and remanding any time the trial court fails to make explicit findings for each factor would not further children's best interests").

## V.     CONCLUSION

Because the superior court had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, and because the superior court's refusal to cede that jurisdiction as an inconvenient forum was not an abuse of discretion, we AFFIRM the judgment of the superior court.