*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BRIANA A. NORRIS, | ) | |
| | ) | Supreme Court No. S-15439 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-12-02918 CI |
| v. | ) | |
| | ) | O P I N I O N |
| RICHARD K. NORRIS, | ) | |
| | ) | No. 6993 – March 27, 2015 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Megan C. Comolli and Jason A. Weiner, Gazewood & Weiner, P.C., Fairbanks, for Appellant. Amy Tallerico, Downes & Tallerico Law Firm, LLC, Fairbanks, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

I.      INTRODUCTION

A married couple moved from Fairbanks to Mississippi to "start a new life" and work on their marriage. After living in Mississippi for a few months the husband filed for divorce, and a Mississippi court entered a temporary child custody order awarding the couple joint physical custody of their child. A few months later the mother fled to Alaska with the child and filed for divorce in the Alaska Superior Court. The

superior court dismissed the mother's action, concluding that Mississippi had exclusive jurisdiction over the matter under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[1] We affirm. Mississippi had jurisdiction when it issued its temporary child custody order because (1) Alaska did not have home state or recent home state jurisdiction when the father filed his suit in Mississippi, and (2) the child had a significant connection to Mississippi and substantial evidence was available there.

## II. FACTS AND PROCEEDINGS

### A. Facts

Richard Keith Norris[2] and Briana Belisle[3] met in Fairbanks while Keith was stationed at Fort Wainwright. Briana had lived in Fairbanks since 2006; Keith was born and raised in Mississippi. The two became romantically involved and had a child, Grant,[4] who was born in July 2011 in Fairbanks.[5] Briana and Keith married immediately after Grant's birth, but they quickly began experiencing marital problems. The couple decided to move to Keith's hometown in Mississippi to "start a new life" and work on their marriage.

The military moved all of the couple's possessions to Mississippi in July 2012, including their only vehicle. Keith registered the vehicle upon arrival, and

---

[1] UNIF. CHILD CUSTODY JURISDICTION & ENFORCEMENT ACT § 202 (1997). In Alaska the UCCJEA is codified at AS 25.30.300-910.

[2] We refer to Richard as Keith throughout this opinion because that is his apparent preference.

[3] Belisle is Briana's maiden name.

[4] Pseudonyms have been used to protect the children's privacy.

[5] Briana has another child, Miles, from a previous relationship. Custody of Miles is not at issue in this case.

both parties filled out and submitted change-of-address forms. Briana testified that she only "left a few things" in Fairbanks, including her sneakers and a sewing machine. Both Briana and Keith opened bank accounts in Mississippi, and Briana applied for and received Women, Infants, and Children (WIC) assistance. The parties initially lived with Keith's parents and discussed buying a house. Keith's parents even took them to look at one. But the couple ultimately rented a house for at least a one-year term. Both parties signed the lease. Briana fully unpacked, painted the boys' room, and hung art on the walls. Keith began taking college classes during the day and working at night. Briana found a job working at a delicatessen, but she eventually quit. Briana and Keith found a doctor for the boys, and Grant and Miles saw the doctor a handful of times while in Mississippi.

In early September 2012 Keith moved out of the home and the parties began informally sharing custody of Grant. Briana testified that in September she told Keith that she and the boys were returning to Alaska permanently. She testified that Keith "was not happy about it" and "wanted to get something in writing before we had left." Keith testified that he did not agree to a permanent return. In late September Briana sent him a text message saying that she was taking Grant back to Alaska and was going to "take Keith for everything he was worth." After this, Keith spoke with the police and took custody of Grant to stop Briana from leaving the state with him.

B.    Proceedings

Keith filed for divorce in Mississippi on October 2, 2012. The parties met in court a week later and signed a temporary custody order. Briana alleges that she signed the order under duress, while Keith's former attorney testified that Briana initiated discussion of the temporary order and negotiated its terms with him. The temporary order gave the parties joint legal and physical custody and barred both parents from

taking Grant more than 100 miles from the county without written consent from the other parent.

Two months later Briana violated this order by taking Grant to Alaska without Keith's written consent. She filed for divorce in the superior court in Fairbanks on December 26, 2012.[6] Keith moved to dismiss the Alaska action for lack of subject matter jurisdiction, arguing that Mississippi assumed exclusive jurisdiction over the case by entering the first child custody order.

The superior court held two hearings on the motion before concluding in its oral ruling that Mississippi lacked jurisdiction when it issued its October child custody order because Alaska still had home state jurisdiction. The superior court reached this conclusion by including the time Grant lived in Mississippi towards its Alaska home state calculation. But the court offered to revisit the issue of jurisdiction if either party filed a motion for reconsideration.

Keith moved for reconsideration on September 30, 2013. On December 13, 2013, the superior court issued an order stating that it needed to conduct a hearing to decide whether the move to Mississippi in July 2012 was temporary, whether Grant had significant connections to Mississippi, and whether substantial evidence relating to his care was available there in order to determine which state had jurisdiction when Keith filed the first divorce action in Mississippi.

The court held an evidentiary hearing a few days later, on December 17. Several witnesses testified that both before and after the couple arrived in Mississippi, Briana always said the move was permanent. Keith's mother testified that Briana told her that even if Briana's relationship with Keith did not work out, Briana was planning to stay in Mississippi to be close to the boys. One witness testified that Briana wished

---

[6]     The Mississippi court thereafter awarded sole physical custody to Keith.

-4-                                                                              6993

to "start . . . somewhere different for her." Multiple witnesses also testified that the couple had discussed purchasing a house in Mississippi, and that once they rented a house they completely moved in. Keith's mother testified that Briana had sought information about schools for Miles and was trying to get him registered for Head Start in Mississippi. And one witness testified that even during the separation, Briana "had no intentions [of] moving away from Mississippi," had moved her cousin into the house, and was looking for a job.

Other witnesses testified that the move was temporary. A few testified that Briana was worried that the heat in Mississippi could aggravate a medical condition she had. One witness testified that "[t]hey were fighting all the time. . . . This was like a last-ditch try to keep their marriage going." Briana testified that she intended the move to be a six-month trial run and that she planned to return to Alaska with the boys if her relationship with Keith did not work out. But none of the witnesses could point to any specific plans to return to Alaska at the time of the move; "[a]s far as [one witness] knew, they were leaving [Alaska] for good," and another witness explained that "they didn't know what was going to happen when they got [to Mississippi]."

Keith and his mother testified that Grant and Miles saw Keith's parents at least every other day. The boys spent holidays with family members, and Keith's aunts and uncles on both sides of his family frequently visited their house. One of Keith's friends testified that Grant often played with his son. Grant also attended church with Keith and would "interact with the congregation there during summer school and daycare."

The superior court issued a written decision on January 2, 2014, dismissing the Alaska case for lack of subject matter jurisdiction. The court found that the move to Mississippi was permanent because the parties moved all of their possessions, enrolled the children in child care, found jobs, entered into a long-term lease, and applied for state

assistance. The superior court also found that Grant had a significant connection to Mississippi and that substantial evidence was available there. Based on these findings of fact,[7] the superior court concluded that when the Mississippi action was filed, neither Alaska nor Mississippi was Grant's home state[8] because the parties had permanently moved to Mississippi but had not yet been in residence there for six months. The court concluded that under these circumstances Mississippi would have jurisdiction because Grant had a significant connection to that state and substantial evidence was available there. The superior court concluded that Mississippi had exclusive jurisdiction under the UCCJEA as the first court to issue a child custody determination. Briana appeals.

---

[7] The superior court framed these issues — permanence of the move, temporary absence, significant connections, and substantial evidence — as questions of fact. Neither party directly challenges this conclusion on appeal, so we will review the issues as though they are factual. We note that there is significant disagreement regarding the standard of review under the UCCJEA for the permanency of a move, temporary absence, significant connections, and substantial evidence. In *Khawam v. Wolfe*, a recent District of Columbia case, the court noted that it had not "decided whether 'significant connection' and 'substantial evidence' determinations under the UCCJEA are legal rulings to be reviewed de novo or instead should be reviewed deferentially." 84 A.3d 558, 563 (D.C. 2014). The *Khawam* court looked to other courts, explaining that "[c]ourts in other jurisdictions take varying approaches to that question." *Id.* It compared our decision in *Steven v. Nicole*, 308 P.3d 875, 879 (Alaska 2013), which reviewed whether substantial evidence existed for abuse of discretion, with *In re Marriage of Sareen*, 62 Cal. Rptr. 3d 687, 691, 695 (Cal. App. 2007), which reviewed de novo whether there was a significant connection, substantial evidence, and whether the move was temporary. *Id.* Because no party has briefed the standard of review issue, we do not decide it here. But we note that our statement in *Steven* that whether substantial evidence exists should be reviewed for an abuse of discretion was likely erroneous. *See* 308 P.3d at 879. Because the parties did not brief this issue, we leave it to be decided in a future case.

[8] *See* AS 25.30.909(7) (defining home state as the state in which the child has lived for the six months immediately preceding the action).

## III.   STANDARD OF REVIEW

"Whether a court can exercise jurisdiction under the UCCJEA is a question of law, which we review de novo."[9] We review any underlying factual determinations for clear error.[10] "A factual finding is clearly erroneous when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[11] "The trial court's factual findings enjoy particular deference when they are based primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence."[12]

We review the superior court's procedural decisions for abuse of discretion.[13]

## IV.   DISCUSSION

Briana argues that (1) Alaska has jurisdiction because Mississippi did not have jurisdiction under the UCCJEA when it issued its initial custody order and (2) the superior court abused its discretion during the reconsideration proceedings by holding an evidentiary hearing and in the timing of its reconsideration.

---

[9]     *Steven*, 308 P.3d at 879.

[10]     *Limeres v. Limeres*, 320 P.3d 291, 295 (Alaska 2014) (reviewing factual findings for clear error).

[11]     *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002) (quoting *Siekawich v. Siekawich*, 956 P.2d 447, 449, (Alaska 1998)) (internal quotation marks omitted).

[12]     *Limeres*, 320 P.3d at 296 (quoting *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011)) (internal quotation marks omitted).

[13]     *Rockstad v. Erikson*, 113 P.3d 1215, 1220 (Alaska 2005).

A.    **The Superior Court Did Not Err When It Concluded That Mississippi Had Exclusive Jurisdiction.**

The superior court correctly recognized that whether it had jurisdiction was linked to whether the parties' move to Mississippi in July 2012 was permanent. Generally, a state may make a child custody determination only if another state has not already done so, or if the other state did not have proper jurisdiction when it issued its custody order.[14] At the time Briana filed her action in Alaska, Keith had already filed an action in Mississippi and remained in that state; thus, Alaska can only take jurisdiction if the Mississippi court did not have jurisdiction when the first action was filed.

There are three relevant ways in which a court can gain jurisdiction.[15] First, a court has jurisdiction if the state in which the court sits "is the home state of the child on the date of the commencement of the proceeding."[16] Second, a court has jurisdiction when the court's "state was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or

---

[14]    Under the UCCJEA, as adopted in Alaska, once one state court has made "a child custody determination consistent with AS 25.30.300 or 25.30.320" then that court "has exclusive, continuing jurisdiction over the determination." Thus, once a court in a sister state has made a custody decision, the Alaska court must determine whether that decision was "consistent with AS 25.30.300 or 25.30.320," the provisions that gives a court jurisdiction. If the court in the sister state issuing the decision had jurisdiction, then Alaska can only exercise emergency jurisdiction, absent a change in circumstances. *See* AS 25.30.310 (exclusive jurisdiction); AS 25.30.330 (temporary emergency jurisdiction); AS 25.30.350 (simultaneous proceedings).

[15]    There are two other jurisdictional bases of AS 25.30.300, but they are not relevant to this appeal. Those two provisions deal with situations in which the child has no home state and any state with a significant connection has declined jurisdiction. *See* AS 25.30.300(a)(4)-(5).

[16]    AS 25.30.300(a)(1).

person acting as a parent continues to live in this state."[17]  "[H]ome state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months, including any *temporary absences* of the child or parent or person acting as a parent, *immediately before* the commencement of a child custody proceeding."[18]  Thus, a state may retain home state jurisdiction if all the parties are absent from the state, but only if the absence is a "temporary absence."[19]  Finally, a court can have jurisdiction when no other state has jurisdiction under the first two provisions, so long as the child and at least one parent have a significant connection to the state and substantial evidence relevant to the child's care is located in the state.[20]

### 1.    Grant did not have a home state when the Mississippi action was filed.

Briana argues that the superior court erred when it concluded that Alaska was not Grant's home state because the move to Mississippi was a "temporary absence." Keith replies that when the couple permanently moved to Mississippi in July 2012, Alaska lost home state jurisdiction.  If the absence from Alaska was temporary, then Alaska was Grant's home state for the duration of his time in Mississippi; if the move was permanent, then Alaska lost home state jurisdiction when Grant left the state in July 2012.[21]  The superior court found "it more likely true than not true that the parties

---

[17]    AS 25.30.300(a)(2).

[18]    AS 25.30.909(7) (emphasis added).

[19]    *See id.*; AS 25.30.300.

[20]    AS 25.30.300(a)(3)(A)-(B).

[21]    *See* AS 25.30.300; AS 25.30.909(7).

intended their move to Mississippi to be permanent when they left Alaska in July 2012."[22]

Based on the totality of the circumstances, the superior court did not clearly err when it found that the move from Alaska to Mississippi was permanent. While the record contains some evidence supporting an intention to move temporarily, the majority of the evidence points to a permanent move. The parties moved all of their belongings to Mississippi, re-registered their car, found work, applied for public assistance, enrolled the children in daycare, found a doctor for the children, and entered into a lease of at least a year's duration in Mississippi. Credible witnesses testified that the parties had discussed buying a house in Mississippi. And most of the witnesses, even the ones who

---

[22] As the superior court noted, we have not adopted a definition of "temporary absences." The UCCJEA also does not define "temporary absences." Other jurisdictions have used varying tests to determine whether an absence is temporary, including: "(1) looking at the duration of absence, (2) examining whether the parties intended the absence to be permanent or temporary, and (3) adopting a totality of the circumstances approach to determine whether the absence was merely a temporary absence." *Chick v. Chick*, 596 S.E.2d 303, 308 (N.C. App. 2004) (citing *T.H. v. A.S.*, 938 S.W.2d 910 (Mo. App. 1997)); *see also In re S.M.*, 938 S.W.2d 910, 918 (Mo. App. 1997) (examining other approaches). In the past we have looked to all of the relevant circumstances in order to decide whether an absence was temporary. *See Atkins v. Virgil*, 59 P.3d 255, 257-58 (Alaska 2002) (per curiam) (looking to the parties' intentions, not merely the child's physical presence in another state). We believe the totality of the circumstances test "is best suited to adequately deal with the variety of situations which occur" in child custody proceedings. *In re S.M.*, 938 S.W.2d at 918; *see also Chick*, 596 S.E.2d at 308 ("[The totality of the circumstances test] provides greater flexibility to the court making the determination by allowing for consideration of additional circumstances that may be presented in the multiplicity of factual settings in which child custody jurisdictional issues may arise.").

testified the move was temporary, indicated that the parties were moving to Mississippi to start over and work on their marriage.[23]

Because the move was permanent, Grant had not lived in Alaska for "six consecutive months . . . *immediately* before the commencement" of the child custody proceeding in Mississippi in October 2012.[24]  Thus, at the time the Mississippi proceeding was filed, Alaska was not Grant's home state.  But Mississippi was not Grant's home state either, because Grant had only lived in Mississippi for three months at the time the Mississippi proceeding commenced, not the six months required for home state status.[25]  The superior court did not err when it concluded that Grant did not have a home state when the October 2012 Mississippi proceedings were initiated.

### 2. Mississippi had jurisdiction when Keith filed the first proceeding.

Neither of the UCCJEA's first two jurisdictional bases apply to this case. Under the first — home state jurisdiction — a court that is the home state of the child may make a custody decision,[26] but as explained above, Grant did not have a home state in October 2012. The second jurisdictional basis — recent home state jurisdiction —

---

[23]    The court also did not clearly err when it found that Keith did not agree that Briana would permanently return with the boys to Alaska.  Keith spoke to a lawyer immediately after he discovered she was leaving and kept Grant in his custody.  And Briana's aunt, Marcy McGraw, only testified that Keith knew Briana had bought plane tickets to Alaska; she did not testify that he consented to a permanent move.  Keith's timing in talking with a lawyer and withholding Grant immediately after that conversation supports the finding that he did not agree that Grant would permanently return to Alaska.

[24]    AS. 25.30.909(7) (emphasis added).

[25]    *See id.*

[26]    AS 25.30.300(a)(1).

confers jurisdiction on a state when that state "was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state *but a parent or person acting as a parent continues to live in this state*."[27] Although Alaska had been Grant's home state within the last six months, no "parent or person acting as a parent continue[d] to live in [Alaska]" when the Mississippi action was filed; thus, this provision is also inapplicable to ground jurisdiction in Alaska.

Under the third jurisdictional basis, a state may make an initial child custody determination when another state does not have jurisdiction under either home state jurisdiction or recent home state jurisdiction.[28] But "the child . . . and at least one parent [must] . . . have a significant connection with [the] state other than mere physical presence," and "substantial evidence [must be] available in [the] state concerning the

---

[27]    AS 25.30.300(a)(2) (emphasis added).

[28]    AS 25.30.300(a) provides:

[A] court of this state has jurisdiction to make an initial child custody determination only if

. . . .

(3) a court of another state does not have jurisdiction under provisions substantially similar to [home state jurisdiction] or [recent home state jurisdiction], or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum . . . , and (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships[.]

child's care, protection, training, and personal relationships."[29]  In *Steven v. Nicole* we affirmed the superior court's finding that substantial evidence was available in Alaska even though the children had not lived here full-time for eight years.[30]  The children still visited Alaska, and we held that evidence relevant to the mother's lifestyle and home in Alaska would be relevant to the proceeding.[31]  And in *Mikesell v. Waterman* we intimated that substantial evidence existed in New Mexico although the child no longer lived there.[32]  The child still visited New Mexico on vacation, had previously lived there, and one of the parents still lived there.[33]

Here the superior court found that Grant had a significant connection to Mississippi and that substantial evidence of his care, protection, training, and personal relationships could be found there.[34]  Briana argues that these findings are clearly erroneous.[35]  But the superior court's findings are supported by the record.  At the time the Mississippi action was filed, Grant and both his parents lived in Mississippi.  Grant

---

[29]     AS 25.30.300(a)(3)(A)-(B).

[30]     308 P.3d 875, 879-82 (Alaska 2013).

[31]     *Id.* at 879-80.

[32]     197 P.3d 184, 189 (Alaska 2008).

[33]     *Id.*

[34]     There is no dispute regarding Keith's connection to Mississippi:  he was born and raised in Mississippi and continues to be a resident there.

[35]     Briana mainly argues that the superior court erred because Grant's connection to Alaska was more significant.  But the superior court never found that Grant's connections to Mississippi were more significant than his connections to Alaska, just that his connections to Mississippi were significant.  The statute does not ask which connections are *more* significant, it asks only if significant connections exist. *See* AS 25.30.300(a)(3)(A).  Therefore, Briana's argument is misplaced.

has extended family in Mississippi, whom he saw regularly. He had a primary doctor and a daycare center that he attended. And he had a friend he played with and other children and adults he associated with at summer school. The superior court did not clearly err in finding that Grant had a significant connection to Mississippi and that substantial evidence would be available there.

Because Grant had a significant connection to Mississippi and substantial relevant evidence was located there, Mississippi had jurisdiction when Keith initiated the October 2012 child custody action. And once a child custody proceeding had "been previously commenced in a court of another state having jurisdiction substantially in conformity with this chapter," Alaska no longer could exercise jurisdiction.[36] The superior court did not err by dismissing the case after it concluded that it did not have subject matter jurisdiction.

## B. The Superior Court Did Not Abuse Its Discretion During Its Review Of The Motion For Reconsideration.

Briana argues that the superior court should not have accepted new evidence on reconsideration and that the motion was deemed denied by operation of Alaska Civil Rule 77(k)(4) because the court issued its decision more than 30 days after she filed her response brief. Neither argument has merit.

Here, the superior court realized it had incorrectly analyzed the issue and also realized that it needed to conduct an evidentiary hearing to resolve lingering factual issues. Although reconsideration should not be "used as a means to seek an extension of time for the presentation of additional evidence on the merits of [a] claim,"[37] the superior court must "be allowed to reconsider and reverse an earlier ruling if convinced

---

[36]    AS 25.30.350.

[37]    *Neil & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 506 (Alaska 1995).

that the earlier ruling was erroneous."[38] Regarding Briana's second argument, the parties were well informed a ruling on the motion would be forthcoming and the 30-day time period set out in Rule 77(k)(4) was not applicable because the court may address questions of subject matter jurisdiction at any time.[39] The superior court did not abuse its discretion by holding an evidentiary hearing or ruling on the motion more than 30 days after Briana filed her response brief.

## V.    CONCLUSION

We AFFIRM the superior court in all respects.

---

[38]    *Gold Dust Mines, Inc., v. Little Squaw Gold Mining Co.*, 299 P.3d 148, 158 (Alaska 2012).

[39]    *See Hawkins v. Attatayuk*, 322 P.3d 891, 895 (Alaska 2014) ("The issue of subject matter jurisdiction 'may be raised at any stage of the litigation and if noticed must be raised by the court if not raised by one of the parties.' " (quoting *Hydaburg Co-op. Ass'n v. Hydaburg Fisheries*, 925 P.2d 246, 248 (Alaska 1996))).