*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JESSIE C. RICE, | ) | |
| | ) | Supreme Court No. S-16218 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-14-03084 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JOHN C. McDONALD and CHARLES RICE, | ) | |
| | ) | No. 7154 – March 3, 2017 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Jessie C. Rice, pro se, Anchorage, Appellant. Notice of nonparticipation filed by Jason F. Doxey, Burglin & Doxey, PC, Fairbanks, for Appellee John C. McDonald. No appearance by Appellee Charles Rice.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I.     INTRODUCTION

The father of three Indian children killed their mother. After the father's arrest, the father's relatives moved the children from Alaska to Texas and gained custody of the children through a Texas district court order. The mother's sister filed a separate

action against the father in Alaska superior court, seeking custody of the children and challenging the Texas order. Although Alaska had exclusive jurisdiction to make the initial custody determination, the Alaska court concluded that Texas was the more appropriate forum and ceded its jurisdiction to the Texas court, primarily because evidence about the children's current status was in Texas.

We vacate the superior court's decision. It was an abuse of discretion to minimize the importance of protecting the children from the father's alleged domestic violence and to minimize evidence required to resolve domestic violence and Indian Child Welfare Act issues in this case.

## II.    FACTS AND PROCEEDINGS

John C. McDonald and his wife were the parents of three minor children born between 2006 and 2010. The parties agree that the children are "Indian children" as defined by the Indian Child Welfare Act (ICWA).[1] The children have maternal relatives living in Anchorage and paternal relatives living in Texas.

The children were born and raised in Fairbanks, and the family lived together in Fairbanks until McDonald killed his wife in March 2014. In August McDonald was arrested, incarcerated, and charged with his wife's murder. He eventually pleaded guilty to criminally negligent homicide in April 2016.

Shortly after his August 2014 arrest, McDonald's sister, Rebecca Schimcek, moved the children from Fairbanks to Texas. That September Schimcek and other paternal relatives filed a custody petition with McDonald's consent in Texas district court. The paternal relatives did not disclose McDonald's pending murder charge in their petition, and the maternal relatives were not notified of the proceeding. The Texas

---

[1]    *See* 25 U.S.C. § 1903(4) (2012).

district court primarily awarded custody of the children to Schimcek and her husband. The order did not contain any reference to potential domestic violence by McDonald.

The next month Jessie Rice, sister of the deceased mother, filed a separate custody petition against McDonald in Alaska superior court, asserting that the mother was deceased and that McDonald was incarcerated and awaiting trial for her murder. Rice's father later joined her in the case, but he did not appear in this appeal. She also filed a motion to vacate the Texas order. McDonald moved to dismiss, arguing that the Alaska court lacked jurisdiction to modify the Texas order.

The superior court denied McDonald's motion to dismiss in November 2015. The court applied the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which defines a priority scheme for determining initial jurisdiction in child custody matters.[2] The court concluded that Alaska, not Texas, had exclusive jurisdiction to make the initial custody determination for the children because Alaska had a higher jurisdictional priority than Texas and had not declined to exercise its jurisdiction.[3] Although the Texas custody order was proper under Texas's temporary

---

[2]     UNIFORM CHILD CUSTODY JURISDICTION & ENFORCEMENT ACT § 201 (1997). The UCCJEA governs child custody jurisdictional disputes between states and has been adopted by both Alaska and Texas. *See generally* AS 25.30.300–.910; TEX. FAM. CODE ANN. §§ 152.001–.317 (West 2015).

[3]     *See* UCCJEA § 201; AS 25.30.300(a); TEX. FAM. CODE ANN. § 152.201(a). A child's "home state" or "recent home state" has jurisdictional priority over other states unless that state declines to exercise its jurisdiction. UCCJEA § 201(a); *see also Norris v. Norris*, 345 P.3d 924, 928-31 (Alaska 2015) (applying priority scheme). The children had not resided in Texas for at least six months immediately before the Texas proceeding, so Texas was not the children's home state. *See* TEX. FAM. CODE ANN. § 152.102(7). But the evidence established that Alaska was the children's recent home state, as Alaska had been their home state within six months before the Texas proceeding and McDonald continued to live in Alaska. *See* AS 25.30.300(a)(2). Therefore Alaska
(continued...)

emergency jurisdiction, the court explained that the Texas order would cease to be effective once the Alaska court issued a final custody order.[4] The court also ordered Rice to join the paternal relatives as necessary parties.[5]

Soon after its decision the Alaska court held a telephonic conference with a district court judge in Texas. In late November the Alaska court requested supplemental briefing based on the UCCJEA's inconvenient forum provision, which allows a state with higher priority to cede jurisdiction to a lower priority state if the other state is a more appropriate forum.[6] McDonald argued that the Alaska court should cede its jurisdiction to Texas; Rice disagreed and argued that the case should remain in Alaska. Rice also claimed that the proceeding was subject to ICWA and argued that evidence required by ICWA, along with evidence related to the homicide, was located in Alaska.

Schimcek submitted an affidavit which established that the children were living with her in Texas. She described each child's current situation, including counseling, healthcare, education, and socialization. She claimed that "[a]ny pertinent testimony or evidence of the children's current well[-]being is here in Texas."

---

[3]    (...continued)
had a higher jurisdictional priority than Texas.

[4]    *See* TEX. FAM. CODE ANN. § 152.204. "Generally, a state may make a child custody determination . . . if the other state did not have proper jurisdiction when it issued its custody order." *Norris*, 345 P.3d at 928. Due to Alaska's higher priority as the children's recent home state, Texas could not properly have had initial custody jurisdiction unless Alaska declined to exercise it. *See* TEX. FAM. CODE ANN. § 152.201(a)(3).

[5]    The paternal relatives apparently were not joined, did not move to intervene, and have not participated in this appeal.

[6]    *See* UCCJEA § 207(a); AS 25.30.360(a).

The next month the Alaska court declined to exercise its jurisdiction, concluding that a court in Texas would be a more appropriate forum to make the initial custody determination. The court based its decision on the evidence in Texas about the children's current status, finding most of the other factors neutral and minimizing the significance of the homicide allegations against McDonald because he was incarcerated. The court suggested that ICWA would not apply unless the children were "placed into state custody" and later explained that "[a]ny requirements of . . . ICWA can be addressed by the Texas court." The court dismissed the Alaska case and ceded jurisdiction to Texas.

Rice appeals. McDonald filed a notice of non-participation.

## III.  DISCUSSION

Rice argues that ICWA applies to this proceeding. She also argues that the Alaska superior court afforded too much weight to the Texas evidence in its decision to decline jurisdiction. We agree.[7]

### A.  ICWA Applies To The Alaska Custody Proceeding.

We apply our independent judgment when interpreting federal statutes such as ICWA.[8]

ICWA applies "to child custody proceedings involving Indian children."[9]

---

[7]      Rice also challenges the use of the inconvenient forum provision itself, but we reject her policy and due process arguments. Rice does not explain how it would violate the UCCJEA's purposes to use the UCCJEA's own provision for transferring jurisdiction. And even if, as Rice argues, the paternal relatives were not "persons acting as parents," she does not explain why this would prevent Texas from having subject matter jurisdiction if Alaska ceded it.

[8]      *Starr v. George*, 175 P.3d 50, 54 (Alaska 2008).

[9]      *A.B.M. v. M.H.*, 651 P.2d 1170, 1172 (Alaska 1982) (citing 25 U.S.C.

"Child custody proceeding" is defined to include "foster care placement," which itself is defined to include "temporary placement in . . . the home of a guardian . . . where the parent . . . cannot have the child returned upon demand."[10] Since the early days of ICWA, we have rejected the claim that ICWA applies "only to custody proceedings involving the removal of Indian children from their homes by nonfamily public and private agencies."[11] Thus we have applied ICWA in a custody dispute between grandparents,[12] in a custody dispute between a father and a stepfather after the mother died,[13] and generally to "custody disputes within the extended family" even when the case "concerns a voluntary placement within the family."[14] We categorized at least one of these custody disputes as a foster care placement.[15]

ICWA applies here. As Rice argues, this dispute is a child custody proceeding involving Indian children as defined by ICWA — specifically, a foster care placement, as Rice seeks to remove the children from McDonald, place them in her

---

[9]    (...continued)
§ 1903(1)).

[10]    25 U.S.C. § 1903(1).

[11]    *A.B.M.*, 651 P.2d at 1172.

[12]    *Starr*, 175 P.3d at 54-55.

[13]    *J.W. v. R.J.*, 951 P.2d 1206, 1208, 1214 (Alaska 1998), *overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078, 1084-85 (Alaska 2004).

[14]    *A.B.M.*, 651 P.2d at 1173. ICWA does not apply in custody disputes between parents. 25 U.S.C. § 1903(1) (divorce exception); *see also John v. Baker*, 982 P.2d 738, 747 (Alaska 1999) (excluding disputes between unmarried parents).

[15]    *J.W.*, 951 P.2d at 1212-13.

home, and prevent him from having the children returned upon his demand.[16] It is clear that this matter is a child custody proceeding involving Indian children, and therefore ICWA applies.

### B. The Inconvenient Forum Factors Were Improperly Weighed.

Rice argues that the superior court placed too much weight on evidence of the children's current status in Texas and minimized the factors that favored Alaska when it declined jurisdiction. We review the court's decision to decline jurisdiction under the abuse of discretion standard.[17] Abuse of discretion occurs if, *inter alia*, the court "assigned disproportionate weight to particular factors while ignoring others."[18] We will overturn a discretionary ruling if "the reasons for the exercise of discretion are clearly untenable or unreasonable."[19]

Under Alaska's UCCJEA a court may cede its jurisdiction to another state's court if the other court is a more appropriate forum.[20] This decision may be made "at any time"[21] and the court may consider "all facts up to the date of the motion or hearing."[22] The court considers "all relevant factors" including eight statutory factors: (1) protection

---

[16] *See* 25 U.S.C. § 1903(1)(i).

[17] *Mikesell v. Waterman*, 197 P.3d 184, 186 (Alaska 2008).

[18] *Moore v. Moore*, 349 P.3d 1076, 1080 (Alaska 2015) (citing *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014)).

[19] *Id.* (citing *Burke v. Maka*, 296 P.3d 976, 980 (Alaska 2013)).

[20] AS 25.30.360(a).

[21] *Id.*

[22] *Szmyd v. Szmyd*, 641 P.2d 14, 21 (Alaska 1982) (applying UCCJEA's predecessor); *see also Mikesell*, 197 P.3d at 190 (evaluating UCCJEA factor based on "the time the motion was filed in this case").

from domestic violence; (2) the length of child's absence from the state; (3) the distance between the states; (4) relative financial circumstances; (5) the parties' agreement; (6) the nature and location of the evidence; (7) the courts' ability to decide the issues expeditiously; and (8) the courts' familiarity with the facts and issues.[23] The court must "articulate its reasoning" but need address only the "pertinent and potentially determinative factors" rather than all of them.[24]

The superior court indicated that most of the factors were neutral and paid little attention to them. The court rested its decision on factor (6), finding that "[t]he main body of the evidence regarding the current status of the children and their needs is in Texas," and concluded that a Texas court would be a more appropriate forum for this matter. The court later emphasized that its decision was "based mostly on the children's current circumstances." We conclude that the court's treatment of this location of evidence factor and minimization of the domestic violence factor was an abuse of discretion.[25]

---

[23] AS 25.30.360(b).

[24] *Steven D. v. Nicole J.*, 308 P.3d 875, 884 (Alaska 2013).

[25] In addition to her arguments regarding the factors we consider in depth, Rice argues that factor (7), the courts' ability to decide, favors Alaska because the Texas proceedings would be delayed by her challenges to Texas's subject matter jurisdiction. But her citations to four Texas cases that do not involve the situation where a state with higher priority ceded jurisdiction to Texas do not convince us that Texas would lack jurisdiction. Rice further argues that factor (8), the courts' familiarity with case, favors Alaska because she has provided the Alaska court "with the most accurate facts," but she does not explain why she could not provide those same facts to a Texas court. It was therefore not an abuse of discretion for the superior court to find factors (7) and (8) neutral, reasoning that either court could "decide the issues in this case expeditiously" and both courts were "equally apprised of the facts and issues of this case."

### 1. Factor (1): protection from domestic violence

Under factor (1), the court should consider "whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child."[26] The superior court found "no evidence of domestic violence in the proposed households" and thus afforded no weight to this factor. Although the allegations against McDonald were "significant," the court minimized concerns about protecting the children from McDonald because he was "not available to exercise physical custody of the children due to his incarceration." But this assumption was unreasonable; McDonald would be available to exercise physical custody as soon as he was released from jail, whether because the charges were dismissed, he was found not guilty, or he had served his sentence.[27]

This factor favors Alaska. Alaska law provides a statutory presumption against an award of custody to a parent who has a history of perpetrating domestic violence.[28] As we have repeatedly articulated, this presumption exists to promote the "important priority of protecting children from domestic violence."[29] We recently emphasized that "superior courts *must* 'consider alleged incidents of domestic violence' " when making a custody determination.[30] And Rice has raised McDonald's alleged

---

[26]  AS 25.30.360(b)(1).

[27]  McDonald had not yet pleaded guilty at the time of the motion.

[28]  AS 25.24.150(g).

[29]  *Stephanie F. v. George C.*, 270 P.3d 737, 751 (Alaska 2012); *see also Williams v. Barbee*, 243 P.3d 995, 1001 (Alaska 2010).

[30]  *Sarah D. v. John D.*, 352 P.3d 419, 430 (Alaska 2015) (emphasis in original) (quoting *Parks v. Parks*, 214 P.3d 295, 302 (Alaska 2009)); *see also Williams*, 243 P.3d at 1004-05; *Puddicombe v. Dreka*, 167 P.3d 73, 77 (Alaska 2007).

domestic violence as an issue continuously throughout these proceedings. In contrast the paternal relatives did not disclose McDonald's murder charges or suggest any concern about McDonald's potential domestic violence, and accordingly the Texas custody order contains no mention of domestic violence.

The domestic violence factor requires the court to consider "which state could *best* protect . . . the child."[31] Alaska law and our courts prioritize protecting children from domestic violence, while the legal landscape in Texas is unclear from the record. Rice has prioritized McDonald's alleged domestic violence as an issue; the paternal relatives have ignored it. Litigating custody in Texas would favor the paternal relatives, reducing the chance that the presiding court would investigate the allegations and protect the children. It was therefore unreasonable to minimize this factor.

## 2. Factor (6): nature and location of the evidence

Under factor (6), the court should consider "the nature and location of the evidence required to resolve the pending litigation."[32] This factor involves identifying the issues in the dispute and considering the evidence required to resolve those issues. Thus when a custody hearing was limited to a "narrow question" involving visitation, we upheld the denial of an inconvenient forum motion because evidence about the child's care was in Alaska.[33] And in an initial custody action where "the evidence should not focus on either party," we upheld the court's decision to decline jurisdiction when the court favored evidence in the other state even though evidence of the child's current

---

[31] AS 25.30.360(b)(1) (emphasis added).

[32] AS 25.30.360(b)(6).

[33] *Steven D. v. Nicole J.*, 308 P.3d 875, 884 (Alaska 2013).

circumstances was in Alaska.[34] We also endorsed the court's observation that the recent "educational and medical evidence" in Alaska was "more amenable to telephonic or written presentation" and "less likely to be questioned" compared to testimony from out-of-state relatives.[35]

As discussed above this case will require resolution of issues involving domestic violence and ICWA. Thus the superior court should have considered what evidence was required to resolve those issues. Instead the court implicitly focused on a narrower issue — whether Rice or the paternal relatives should have initial custody of the children. The court minimized the importance of both domestic violence evidence, due to McDonald's incarceration, and ICWA, stating that any ICWA requirements could be "addressed by the Texas court." The court accordingly found that this factor favored Texas because "[t]he main body of the evidence regarding the current status of the children and their needs is in Texas" including evidence from teachers, doctors, counselors, friends, and caregivers.

But as Rice argues, the nature of the Texas evidence is "more amenable to telephonic or written presentation" and "not expect[ed] . . . to be a matter of serious dispute." The Alaska evidence is more complex. The children's mother was killed in Alaska; evidence related to her homicide, as well as other potential evidence from the Office of Children's Services, is located in Alaska. Furthermore, ICWA sets out placement preferences which are governed by "the prevailing social and cultural standards of the Indian community . . . with which the parent or extended family

---

[34] *Mikesell v. Waterman*, 197 P.3d 184, 190, 192 (Alaska 2008).

[35] *Id.* at 192.

members maintain social and cultural ties"[36] and requires testimony from a qualified expert witness when ordering a foster care placement.[37]  This evidence is located in Alaska.  It was therefore unreasonable to conclude that this factor favors Texas.

## IV.  CONCLUSION

For the reasons explained above, we VACATE the superior court's decision and REMAND for further proceedings.

---

[36]    25 U.S.C. § 1915(d).  A cultural standards issue apparently arose during this dispute.  McDonald challenged Rice's relationship with his wife and attested that Rice was his wife's biological niece, not her sister.  Rice responded by alluding to a tribal adoption.  The court stated that "the parties are free to argue the significance of this distinction during the child custody proceedings."

[37]    25 U.S.C. § 1912(e).